**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK BURDETT,

        Plaintiff,

    v.

SAN FRANCISCO POLICE OFFICER
RAMON REYNOSO, ET AL.,

        Defendants.

_____/

Case No. C-06-00720 JCS

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [Docket
Nos. 84, 91]**

## I. INTRODUCTION

This civil rights action involves allegations that officers of the San Francisco Police Department ("SFPD") used excessive force and falsely arrested Plaintiff, Mark Burdett, as he was videotaping an anti-war demonstration that occurred on March 20, 2004. Both Plaintiff and Defendants bring motions for summary judgment (hereinafter referred to as "Plaintiff's Motion" and "Defendants' Motion"). All parties have consented to the jurisdiction of a United States magistrate judge, pursuant to 28 U.S.C. § 636(c). On Friday, August 10, 2007, at 1:30 p.m., a hearing on the Motions was held. For the reasons stated below, Plaintiff's Motion is DENIED. Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Facts

#### 1. The March 20 Demonstration: Events Leading up to Plaintiff's Arrest

On March 20, 2004, there was a large anti-war demonstration in San Francisco marking the first anniversary of the United States' involvement in the Iraq war. Declaration of Ronald P. Flynn in Support of Defendants' Motion for Summary Judgment ("Flynn Decl."), Ex. A (Deposition of

**United States District Court**
For the Northern District of California

1  Deputy Chief Gregory Suhr ("Suhr Depo.") at 10, 14.  The demonstrators, numbering in the tens of

2  thousands, had been given a permit to march from Dolores Park to Civic Center.  *Id*. at 14.  A small

3  group of demonstrators, however, left the main route and marched south along Jones Street toward

4  Market Street.  Declaration of Ben Rosenfeld in Support of Plaintiff's Motion for Partial Summary

5  Judgment re False Arrest ("Rosenfeld Motion Decl."), Ex. D (Deposition of Lieutenant David Lazar

6  ("Lazar Depo.")) at 39.  Estimates in the record of the size of this group range from 50 to 300

7  individuals.  *See* Rosenfeld Motion Decl., Ex. E (Event History Detail) at 18 (estimating 250-300

8  protesters); Flynn Decl., Ex. B (Lazar Depo.) at 33 (estimating 50 protesters).  As these

9  demonstrators walked along the sidewalk on Jones Street, a platoon of SFPD Officers, headed by

10  SFPD Officer David Lazar, walked alongside them on the street.  Rosenfeld Motion Decl., Ex. D

11  (Lazar Depo.) at 39.

12  According to Officer Lazar, one of the demonstrators with the Jones Street group, later

13  identified as Noah Shepardson-Brewster, was yelling at the SFPD officers and "frequently" stepping

14  off the curb as the group walked down Jones Street.  Flynn Decl., Ex. B (Lazar Depo.) at 43-44.

15  Officer Lazar testified that officers "repeatedly" told Shepardson-Brewster to get back on the

16  sidewalk.  *Id*. at 44.  Officer Lazar states that after this had occurred at least twice, he instructed

17  another SFPD Officer at the scene, Sergeant Hamilton, that if Shepardson-Brewster stepped off the

18  sidewalk again, he should be arrested for failure to obey the orders of a traffic officer to remain on

19  the sidewalk.  *Id*. at 49-50.

20  Officer Lazar testifies that at the intersection of Jones Street and McAllister Street (near

21  Market Street), Shepardson-Brewster stepped off the curb again and began walking in a

22  southwesterly direction in the intersection.  *Id*. at 52.  Officer Lazar gave the order to arrest

23  Shepardson-Brewster, and Officers Lazar and Hamilton, as well as other officers, began to pursue

24  him.  *Id*. at 55.  Shepardson-Brewster ran away from the officers, heading westbound down Market

25  Street.  *Id* at 57.  One of the officers pursuing Shepardson-Brewster, Officer James Riorden, reported

26  that he grabbed Shepardson-Brewster's wrist at the "southwest corner of Jones and Market" but that

27  another individual (who was later arrested) pulled Shepardson-Brewster away from him.  Rosenfeld

28  Motion Decl., Ex. A (Incident Report) at SF 46.  Officer Lazar states that Shepardson-Brewster then

**United States District Court**

For the Northern District of California

1    ran west on Market Street, but that his path was cut off by a police car that was traveling eastbound

2    on Market.  Flynn Decl., Ex. B (Lazar Depo.) at 67.  Ultimately, Shepardson-Brewster was

3    apprehended and arrested on Market Street, in front of the Market Street Cinema.  Rosenfeld Decl.,

4    Ex. A (Incident Report) at SF 39; Rosenfeld Motion Decl., Ex. P (photograph of location of arrest

5    showing Market Street Cinema).  Shepardson-Brewster was taken into custody and subsequently

6    transported to the hospital, where he was treated for a right arm fracture.  *Id.*

7        As events relating to Shepardson-Brewster's arrest were unfolding, some of the

8    demonstrators who had been walking down Jones Street continued onto Market Street and "mov[ed]

9    towards the area [of the arrest] to get a better look."  Flynn Ex., Ex. C (Deposition of Mark Burdett

10    ("Burdett Depo.")) at 100.  According to Officer Lazar, SFPD officers attempted to secure the area

11    of the arrest by encircling it in order to prevent a larger group of people from approaching the scene.

12    Flynn Decl., Ex. B (Lazar Depo.) at 62.  Officers who were at the scene reported that some officers

13    were yelling at demonstrators to stay away from the arrest and to get back on the sidewalk.

14    Rosenfeld Motion Decl., Ex. A at SF 39 (Incident Report Statement (unclear which officer), stating

15    that "Sergeant Hamilton # 775 verbally admonished numerous demonstrators to stay on the

16    sidewalk"), SF 43 (Incident Report of Officer Reynoso, stating that "at [M]arket @ Jones I heard

17    Sgt. Hamilton # 775 order protesters to stay on the sidewalk as they were trying to cross against a

18    red light"); Ex. B (Deposition of Officer Ramon Reynoso ("Reynoso Depo.")) at 53 (stating that he

19    and other officers were "yelling" at the crowd, 'Everybody stand on the sidewalk. Get back'");

20    Flynn Decl., Ex. F (Deposition of Officer Kelvin Sanders ("Sanders Depo.")) at 76 (testifying that

21    he was yelling at protesters to "[g]et back over to the sidewalk.  Get out [of] the street").  Plaintiff

22    also testified, "I believe I remember police yelling at people 'get onto the sidewalk,' or something

23    like that."  Flynn Decl., Ex. C (Burdett Depo.) at 74.  It appears to be undisputed that Market Street

24    was blocked off to civilian traffic at the location of the arrest.  *See* Defendant's Opposition to

25    Plaintiff's Motion at 19 (noting that "one of the videos show[s] cars lined up to try to get on Market

26    at the very time the incident is going on").

27

28

United States District Court
For the Northern District of California

## 2.    Plaintiff's Arrest

During the events described above, Plaintiff Mark Burdett was videotaping the demonstration.  Flynn Decl., Ex. C (Burdett Depo.) at 64.  Burdett was wearing a Press pass around his neck.[1]  Rosenfeld Motion Decl., Ex. P at P14-P16.  Burdett had been "accompanying the march on some of the streets north of Market" and was on Market Street when SFPD officers were attempting to arrest Shepardon-Brewster.  *Id*. at 64, 73.  One of the officers on the scene, Officer Reynoso, stated in his incident report that he saw Burdett "run into the street directly to where [Shepardson-Brewster] was being taken into custody and interfer[e] with the arrest."  Rosenfeld Motion Decl., Ex. A at SF 43.  Burdett does not dispute that he was trying to film the arrest and concedes that in doing so, he "may have moved into an angle to capture that."  *Id*. at 78.  However, he asserts that he ran at an angle to the arrest and that he was filming the arrest from a distance of about 33 feet, "well outside of any zone of interference, and farther away than many other observers and photographers who were unmolested by the police."  Plaintiff's Motion at 3.  In support of this assertion Plaintiff's counsel offers his own measurements, using photographs taken at the scene of the arrest showing the relative positions of Burdett and Shepardson-Brewster.  *See* Rosenfeld Motion Decl., ¶ 30 & Ex. P at P4 (photograph showing Burdett filming arrest), P5 (photograph of Shepardson-Brewster being arrested), Ex. W (photograph showing measurements by Plaintiff's counsel).[2]  Plaintiff asserts he was not in the street, but rather, in a "parking-turnout" when he was filming the Shepardson-Brewster arrest.  Plaintiff's Opposition to Defendants' Motion at 8.  He does not dispute, however, that he was not on the sidewalk or in a cross-walk.

While Burdett was filming the arrest, an SFPD motorcycle parked near Burdett was knocked over.  *See* Rosenfeld Motion Decl., Ex. C (Deposition of Mark Shea ("Shea Depo.") at 88.  Burdett

[1]  Plaintiff's Motion states that Plaintiff was covering the demonstrations for "Indymedia, an internet-based alternative news outlet."  Plaintiff's Motion at 1.  While it does not appear that Defendants dispute this representation, the Court finds no evidence in the record regarding Indymedia or Plaintiff's affiliation with it.

[2]  Defendants object to this evidence, asserting it is inadmissible – and therefore should not be considered on summary judgment – because Plaintiff's counsel cannot appear as a witness at the trial.  Defendant's Opposition at 18.  The Court does not rule on this objection but rather assumes, without deciding, the evidence is admissible.  The Court does not rely on this evidence in support of its ruling.

4

United States District Court

For the Northern District of California

1   maintains that he did not knock over the motorcycle but rather, that it was knocked over by an

2   unidentified third party.  Plaintiff's Motion at 3.  He points to evidence that the motorcycle was on

3   its right side, indicating that the motorcycle fell *toward* Burdett.  Rosenfeld Motion Decl., Ex. P at

4   P4, P13.  He also notes that in the video footage, Burdett as well as other protesters stated that

5   Burdett had not knocked over the motorcycle.  Plaintiff's Motion at 4.  In contrast, Officer Shea

6   testifies that he saw Burdett knock over the motorcycle.  Rosenfeld Motion Decl., Ex. C (Shea

7   Depo.) at 91.  Plaintiff argues this is obviously "fabricated," asserting that the video footage plainly

8   shows that Officer Shea "was not even looking at Mr. Burdett when the motorcycle was knocked

9   over, but in fact locked on to him only after he (Shea) heard the sound."  Plaintiff's Motion at 3; *see*

10  *also* Flynn Decl., Ex. C (Burdett Depo.) at 111 (stating that Officer Shea was looking away when the

11  motorcycle fell and only turned toward Burdett when he heard it fall).  In any event, it is undisputed

12  that Officer Shea ran toward Burdett after hearing the motorcycle fall.  *See* Defendants' Video

13  Exhibits A-C.

14       According to Officer Shea's account, Burdett "delayed and resisted" arrest by running away

15  from him.  Rosenfeld Motion Decl., Ex. C  ("Shea Depo.") at 91.  Burdett, on the other hand, asserts

16  that Officer Shea was "running directly at [him] with the stick" and that he was "stepping out of

17  [Officer Shea's] way so that he wouldn't run into [Burdett]."  Flynn Decl., Ex. C (Burdett Depo.) at

18  114.  The video footage of the event clearly shows Burdett backing away from Officer Shea.

19  Defendants' Video Exhibits A-C; *see also* Flynn Decl., Ex. G (Deposition of Aline Nunes ("Nunes

20  Depo.") (stating that "I see the cop charge – run toward [Burdett] and Mark ran.  Backwards at first

21  [and then] they tackled him . . . ").

22       According to Burdett's account, he continued to videotape Officer Shea as he ran toward

23  Burdett and did not stop until Officer Shea grabbed him.  *Id*. at 114-115.  At that point, he was

24  holding a video camera in his right hand and a microphone in his left hand.  *Id*. at 114.  As Officer

25  Shea grabbed Burdett on one side, another officer – Officer Brown – grabbed Burdett from the other

26  side.  *Id*. at 115-116.  The officers then ordered Burdett to "get down."  *Id*. at 115.  Officer Reynoso

27  testifies that "it didn't appear that [Burdett] was complying" with this command.  Flynn Decl., Ex E

28  (Reynoso Depo.) at 104.  However, Burdett testifies that it was difficult for him to respond to the

1    command because "there was two officers holding me and kind of pulling in different directions . . .

2    And also my hands were full.  So it was pretty much impossible for me to do anything because I was

3    under their control."  Flynn Decl., Ex. C (Burdett Depo.) at 116.  According to Burdett, he dropped

4    to a kneeling or sitting position when one of the officers "nudged at [Burdett's] leg, either with his

5    hand or stick or something."  *Id*. at 116.

6           According to Burdett, Officer Cesari then grabbed him and flung him face first on the

7    sidewalk, causing him to sustain a welt on his forehead.  *See* Flynn Decl., Ex. N (Plaintiff's

8    Amended Response to Defendant Michael Cesari's Interrogatories) at 3; *see also* Rosenfeld Motion

9    Decl., Ex. P at P17, P18 (showing Burdett with red welt on forehead).  As Burdett lay face-down on

10   the ground, officers, including Officer Smalley, put flex cuffs on him.  Flynn Decl., Ex. O

11   (Plaintiff's Amended Response to Defendant Stephen Smalley's Interrogatories) at 3.  Plaintiff states

12   in his interrogatory responses that "Officer Smalley grasped, held and pulled plaintiff's right thumb

13   with his (Smalley's) right hand, then quickly twisted the right thumb back and down while Officer

14   Reynoso was still pinning plaintiff's right arm with his (Reynoso's) hand and knee, fracturing

15   [Burdett's] thumb."  *Id*.  According to Burdett, he did not resist or respond physically, but expressed

16   pain by saying "Ow."  *Id*.

17          Officer Reynoso offers a somewhat different account, stating that when he went to assist in

18   putting flex cuffs on Burdett, "[Burdett] had his hands trying to go towards the inner part of his

19   body, like avoiding anybody getting his hands to put them behind his back, and by the time I

20   grabbed his forearm he was still tensing up."  Flynn Decl., Ex. E (Reynoso Depo.) at 104.  Reynoso

21   testified further, "he was giving up easy, but he was still [in] a tense mode, and I held them."  *Id*.;

22   *see also* Flynn Decl., Ex. P (Cesari Depo.) at 28 (testifying that he observed Burdett "tensing his

23   body").

24          After the officers placed flex cuffs on Burdett, Burdett sat on the curb.  *See* Flynn Decl., Ex.

25   B (Lazar Depo.) at 30.  Officer Lazar testifies that at some point, he asked another officer to have a

26   paramedic check on Burdett because of the welt on his forehead.  *Id*. at 175.

27                    **3.      Plaintiff's Charging**

28          Following Burdett's arrest, Officer Lazar, who had not witnessed Burdett's arrest but who

6

United States District Court

For the Northern District of California

1    was the highest ranking officer on the scene, had a conversation or conversations with Officers

2    Reynoso, Sanders and Hamilton about what charges to assert against Plaintiff.  Flynn Decl., Ex. B

3    (Lazar Depo.) at 102, 110.  According to Officer Lazar, Officer Reynoso told him that Burdett had

4    been arrested because "Mr. Burdett was in the street and . . . when we were in the process of

5    arresting Mr. [Shepardson-Brewster] was coming towards us, coming towards the group of officers."

6    *Id*. at 117.  Officer Reynoso further told Officer Lazar that "officers at the time were yelling for

7    people to get back – to get out of the street, back on the sidewalk [and] Mr. Burdett did not comply

8    with that order."  *Id*.  And finally, according to Officer Lazar, Officer Reynoso told him that Burdett

9    had "resisted arrest during the handcuffing stage."  *Id*. at 118.

10    Based on this information, Officer Lazar instructed the officers as to the charges to be

11    asserted against Burdett.  *Id*.  Burdett was charged with violations of: 1) Cal. Vehicle Code § 21950;

12    2) Cal. Vehicle Code § 2800(A); 3) Cal. Penal Code § 148; and 4) San Francisco Municipal Police

13    Code ("MPC") § 22.  Rosenfeld Motion Decl., Ex. A at SF 42.  Officer Reynoso volunteered to

14    handle the arrest.  Flynn Decl., Ex. B (Lazar Depo.) at 118.

15    **4.    Plaintiff's Subsequent Custodial Detention and Fingerprinting**

16    After the arrest, Burdett was taken to the County Jail.  Rosenfeld Decl., Ex. A at SF 33.

17    There, he was seen by a nurse, Christopher Bolt, who completed a triage slip noting a "hematoma"

18    on Burdett's left forehead.  Flynn Decl., Ex. S (Triage Slip) at 001.  The slip also contained the

19    notation "C/O PAIN R. THUMB PAIN ROM CMS +."  *Id*.  The nurse explained in deposition that

20    C/O stands for "complaint of," "ROM" means "range of motion" and "CMS" means "color, motion,

21    sensitivity."  Flynn Decl., Ex. R (Deposition of Christopher Alan Bolt ("Bolt Depo.")) at 19-20.

22    Although Bolt had no independent memory of examining Burdett, Bolt read his own notations as

23    indicating that he "asked [Burdett] to show [Bolt] his thumb, [he] looked at [Burdett's] thumb, [Bolt]

24    asked [Burdett] to move it around, [Bolt] looked at the color . . . [and] [Bolt] didn't see anything

25    wrong with his thumb."  *Id*. at 20.

26    Next, Burdett's fingerprints were taken by Defendant John Delfin.  Burdett offers the

27    following account of what occurred:

28    While standing at the fingerprint station in the booking area of county

7

**United States District Court**
For the Northern District of California

jail, plaintiff informed Mr. Delfin that his right thumb was injured and hurting, and requested that he not be subjected to a rolling thumbprint. In response, Mr. Delfin said words to the effect that plaintiff needed to have his thumbprint taken and that he (Delfin) would take it regardless of the plaintiff's pain and injury. Mr. Delfin then grasped Plaintiff's right hand with one or both of his hands, pushed plaintiff's right thumb onto the fingerprint machine, and forcibly rolled the thumb onto the machine. . . . Plaintiff did not resist Delfin, or physically respond in any way. Plaintiff made exclamations of pain.

Flynn Decl., Ex. T (Plaintiff's Amended Response to Defendant John Delfin's Interrogatories) at 3-4. In his deposition, Burdett testified that he told Delfin that he "didn't know if it was a good idea" to take his thumb print because "something was wrong with it." Flynn Decl., Ex. C (Burdett Depo.) at 158. He said he told Delfin that although he "didn't know for sure what was wrong," it was "pretty painful." *Id*. Burdett testified that "I think I asked him like if I had to because my thumb had been injured. And he basically . . . put my thumb on the thing and didn't give me an option." *Id*. at 159. Burdett did not recall whether he told Delfin that his thumb might be broken.[3] *Id*. at 160.

Some time later, Burdett was given an ice pack. *Id*. at 160. Having only one ice pack, Burdett put it on his forehead because he was "concerned about this big welt on my head." *Id*. at 161.

While Burdett was being detained, a San Francisco Sheriff's Department employee ran a warrant check on Plaintiff and discovered three outstanding warrants. *See* Declaration of Veronica Toussaint in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Toussaint Decl.") & Ex. B (list of outstanding warrants).

---

[3] The only evidence in the record addressing Plaintiff's subsequent treatment is found in support of Defendants' Motion. In particular, an expert report submitted by Defendants indicates that Plaintiff told the expert that after he was released from custody, he went to San Francisco General Hospital Emergency Room "where he was examined, x-rayed, and splinted for what was described as a fracture of the right thumb." Flynn Decl., Ex. W (Expert Report of Dr. Arthur Sciaroni) at 10. Dr. Sciaroni notes that the x-rays that were taken at San Francisco General on March 20, 2004 "reveal 1- to 2-mm diameter bone ossicles projected over the radial side of the most distal aspect" of Plaintiff's right thumb and that it was "not clear whether these ossific densities represent acute fracture fragments or are old." *Id* at 13. Plaintiff told the expert that he wore a splint on his thumb for six weeks, but did not see any health practitioners after this until July 2004 because he did not have health insurance until that time. *Id*. at 11. On July 20, 2004, according to the expert's account, Plaintiff was examined by a Dr. Noble, who did not treat Plaintiff, but instead referred him to Berkeley Orthopaedics. *Id*. Plaintiff was examined at Berkeley Orthopaedics on December 12, 2006. *Id*.

### 5.   Officer Bautista

At a separate location, sometime before the events described above, Plaintiff had an encounter with Officer Bautista.  According to both Burdett's account and Bautista's, Burdett was walking with a group of protestors toward a police line.  Flynn Decl., Ex. U (Defendant Officer Melvin Bautista's Responses to Interrogatories, Set One ("Bautista Interrogatory Responses")) at 6-8; Plaintiff's Opposition to Defendants' Motion at 15 ("one can see [from Plaintiff's video] that plaintiff calmly approached the police line."); Defendants' Video Exhibit C (Plaintiff's Video).  As Burdett approached the line, police officers were yelling at protesters to get back.  *Id.*  As Burdett continued to film arrests that were going on, Officer Bautista swung his baton at Burdett and others with him.  *Id.*  Although Bautista did not hit Burdett, Burdett can be seen in the videotaped footage ducking to avoid Bautista's baton.  *Id.*  In his deposition, Burdett testified that he was not aware of how close Bautista's baton came to his head until he watched the videotape.  Flynn Decl., Ex. C (Burdett Depo.) at 76-77.

### B.   The Second Amended Complaint

Plaintiff filed this action on February 1, 2006.  Plaintiff has amended his complaint twice since that time.  In his Second Amended Complaint ("SAC"), Plaintiff names as Defendants the following SFPD Officers: 1) Ramon Reynosa; 2) Mark Shea; 3) Philip Brown; 4) Stephen Smalley; 5) Melvin Bautista; 6) Michael Cesari; 7) David Hamilton; and 8) David Lazar ("the SFPD Individual Defendants").  In addition, he names as defendants San Francisco Sheriff's Department ("SFSD") Employee John Delfin, and the City and County of San Francisco.

Plaintiff asserts the following eleven claims in his SAC:

Claim One:   **Unlawful Detention, Arrest and Imprisonment – Federal Law** (asserted under 42 U.S.C. § 1983 based on alleged violation of the Fourth Amendment to the U.S. Constitution); asserted against all SFPD Individual Defendants.  SAC ¶ 25.

Claim Two:   **False Arrest and Imprisonment – State Law** (asserted under the California Constitution, Art. I,  §§ 1, 13, California common law, and the following statutory provisions: Cal. Civ. Code §§ 43, 1708 and 3333; Cal. Gov't Code §§ 815.2 and 815.6; Cal. Pen. Code § 853.6; Cal. Vehicle Code § 40504); asserted against all SFPD Individual Defendants.  SAC ¶¶ 26-27.

Claim Three:   **Unnecessary and Excessive Force – Federal Law** (asserted under 42 U.S.C. § 1983 based on alleged violation of Fourth Amendment to the U.S.

United States District Court
For the Northern District of California

Constitution); asserted against Defendants Shea, Reynoso, Brown, Smalley, Cesari, Bautista, and Delfin.  SAC ¶¶ 28-30.

Claim Four:  **Assault and Batteries; Invasion of Privacy – State Law** (asserted under California Constitution, Art. I, §§ 1, 7 and 13, California common law, and the following statutory provisions: Cal. Civ. Code §§ 43, 1708 and 3333, Cal. Gov't Code §§ 815.2 and 815.6); asserted against Defendants Shea, Reynoso, Brown, Smalley, Cesari, and Delfin.  SAC ¶¶ 31-32.

Claim Five:  **Violation of First Amendment Rights – Federal Law** (asserted under 42 U.S.C. § 1983 based on alleged violation of First Amendment to U.S. Constitution); asserted against all SFPD Individual Defendants.  SAC ¶¶ 33.

Claim Six:  **Interference with and Retaliation for Exercise of Free Speech, Freedom of Assembly, Freedom of the Press, and Freedom to Petition the Government for Redress of Grievances; Abuse of Process and Violation of Due Process  – State Law** (asserted under California Constitution, Art. I, §§ 2 and 13, California common law and the following statutory provisions: Cal. Civ. Code §§ 43, 1708 and 3333); asserted against all SFPD Individual Defendants, except Melvin Bautista.  SAC ¶¶ 34-36.

Claim Seven:  **Deliberate Indifference to Medical Needs – Federal Law** (asserted under 42 U.S.C. § 1983 based on alleged violation of the Fourteenth Amendment to the U.S. Constitution and Federal common law); asserted against all individual Defendants.  SAC ¶ 37.

Claim Eight:  **Unlawful Search and Seizure of Property – Federal Law** (asserted under 42 U.S.C. § 1983 based on alleged violation of Fourth Amendment to U.S. Constitution); asserted against Defendants Shea, Reynoso, Brown, Cesari, and Smalley.  SAC ¶ 38-39.

Claim Nine:  **Violation of California Civil Rights – State Law** (asserted under California's Bane Act, Cal. Civ. Code §§ 52.1 and 52; and under Cal. Civ. Code §§ 43, 1708 and 3333); asserted against all individual Defendants.  SAC ¶¶ 40-42.

Claim Ten:  **Conspiracy and Cover-Up – Federal Law** (asserted under Federal common law); asserted against all individual Defendants.  SAC ¶ 43.

Claim Eleven: **Negligence – State Law** (asserted under California common law and Cal. Civ. Code § 3333); asserted against all Defendants, including the City and County of San Francisco.  SAC ¶ 44.

Although the City and County of San Francisco is not named as a Defendant on any of the state law claims except negligence, Plaintiff alleges that it is liable in *respondeat superior* for all of the state law violations committed by employee officers in the course and scope of performing their official duties.  SAC ¶ 46.

10

United States District Court

For the Northern District of California

**C.      The Motions**

      **1.      Plaintiff's Motion**

Plaintiff seeks summary judgment on his federal law claim for Unlawful Detention, Arrest and Imprisonment and his state law claim for False Arrest and Imprisonment, Claims One and Two, respectively.  Plaintiff's Motion at 6.  The primary ground for his Motion is that "Defendants never had probable cause for any of the charges they leveled against Mr. Burdett, and their custodial arrest of him was therefore false as a matter of law, entitling [P]laintiff to summary judgment of his false arrest claims."  *Id.*

In his Motion, Plaintiff addresses each of the possible statutory violations for which there might have been probable cause for arrest and argues that the evidence is insufficient, as a matter of law, to support a finding of probable cause.  First, Plaintiff argues that there was no probable cause to arrest under Cal. Penal Code § 594(a) (prohibiting vandalism).  *Id.* at 8-12.  Plaintiff points to video footage that he asserts establishes that Officer Shea did not see Plaintiff knock over the motorcycle.  *Id.* at 10.  According to Plaintiff, probable cause is further undermined by the video footage because it shows that the motorcycle fell toward Plaintiff and not away.  *Id.*  And to the extent that Plaintiff's mere proximity to the motorcycle when it fell might have supported a finding of reasonable suspicion, Plaintiff asserts, that suspicion would had to have dissipated when the officers fulfilled their duty to investigate because it was obvious the motorcycle had fallen *toward* Plaintiff and because many in the crowd, including an individual who was never located but who appears on a videotape shot by the SFPD, protested to the officers that Plaintiff had not pushed over the motorcycle.  *Id.* at 11.  Plaintiff also notes that he was never charged with violating any statute based on the alleged pushing over of the motorcycle.  *Id.* at 10.

Second, Plaintiff argues that there was no probable cause to arrest him for willfully resisting, delaying or obstructing the efforts of the SFPD officers to arrest either protester Shepardson-Brewster or Plaintiff himself in violation of Cal. Penal Code § 148(a).  *Id.* at 12-18.  With respect to the former, Plaintiff asserts that the testimony of Officer Reynoso that he saw Plaintiff run into the street directly to where Shepardson-Brewster was being arrested and interfere with that arrest is contradicted by the videotape footage.  *Id.* at 15.  According to Plaintiff, the videotape shows that he

1    did not run directly to where the arrest was occurring but instead ran at an angle wide to the right of

2    that arrest and took up a position that was approximately 33 feet from that arrest, near the curb, too

3    far away to interfere and farther away than many other observers that can be seen in the video

4    footage. *Id*.

5           With respect to his own arrest, Plaintiff asserts that the videotape again supports the

6    conclusion that there was no probable cause for arrest, showing that Plaintiff "tried to avoid collision

7    with Officer Shea, who hurtled himself at" Plaintiff and who "did not issue any orders to [Plaintiff]

8    to even consider violating" as Officer Shea "charged" Plaintiff. *Id*. at 16.  Despite avoiding Officer

9    Shea's "charge," though, Plaintiff asserts that the videotape footage shows that he was arrested only

10   a few feet away and that he allowed himself to be arrested without resistance. *Id*. at 17.  He further

11   asserts that the video shows that it was "impossible" for him to comply immediately with the

12   officers' command that he get down because he was "tangled up in his camera strap." *Id*.  Plaintiff

13   challenges testimony by Officer Reynoso that Plaintiff would not surrender his left arm for

14   handcuffing, pointing again to the video footage, which Plaintiff asserts shows that he came "down

15   with both arms outstretched" after Officer Cesari "[threw] him over onto his stomach." *Id*.  Finally,

16   as to both arrests, Plaintiff asserts that there is no evidence that any of his acts were willful, even if

17   he might have unintentionally delayed or obstructed the efforts of the SFPD officers. *Id*.

18          Third, Plaintiff argues that there was no probable cause for arrest under Vehicle Code

19   § 21950(b), which prohibits a pedestrian from "suddenly leav[ing] a curb or other place of safety and

20   walk[ing] or run[ning] into the path of a vehicle that is so close as to constitute an immediate

21   hazard." *Id*. at 18-25.  Plaintiff asserts that the video footage clearly shows that there was no

22   "immediate hazard" because "Plaintiff crossed Market Street with numerous other people, including

23   other police officers, while it was blocked to thru traffic, and . . . took up a position adjacent to the

24   curb, within a turnout, outside of any lane of traffic." *Id*. at 20.

25          Fourth, Plaintiff argues that Defendants did not have probable cause to arrest him for

26   violation of MPC § 22, which prohibits the obstruction of "the free passage of any person or persons

27   on any street, sidewalk, passageway or other public place." MPC § 22(a). *Id*. at 25-26.  In

28   particular, Plaintiff asserts that there is no evidence that Plaintiff obstructed any person. *Id*. at 25.

12

United States District Court
For the Northern District of California

1    Moreover, Plaintiff points to an express exception in the statute for situations in which application of

2    the code provision "would result in an interference with or inhibition of any exercise of the

3    constitutionally protected right of freedom of speech or assembly." *Id*. (citing MPC § 22(c)). This

4    exception is addressed in the SFPD's own General Order 6.11 regarding application of MPC § 22

5    during demonstrations. *Id*. at 26. That General Order requires that "officers shall warn persons to

6    desist obstructing prior to enforcing Section 22 MPC." *Id*. (quoting Department General Order

7    6.11). It also defines "obstructing" as "intentionally placing one's body in the normal path of a

8    person's approach causing the person's 'free movement' to be obstructed." *Id*. The General Order

9    continues, "[c]ausing a slight deviation in a pedestrian's path does not necessarily constitute an

10   illegal obstruction, nor does the mere presence of a person on a sidewalk. A street or sidewalk

11   cannot be obstructed, only a person." *Id*.

12        Fifth, Plaintiff argues that Defendants had no probable cause to arrest him based on Vehicle

13   Code § 2800, making it "unlawful to willfully fail or refuse to comply with a lawful order, signal, or

14   direction of a peace officer" when the officer is in uniform and performing his or her duties under

15   the Vehicle Code. *Id*. at 27-30. He points to a lack of evidence that Officer Shea gave Plaintiff any

16   orders as he "charged" him, arguing that as a result, his effort to avoid Officer Shea could not have

17   fallen within the ambit of Cal. Vehicle Code § 2800. *Id* at 27. He also asserts that he failed to

18   immediately drop to the ground when told to do so because he was tangled in his camera strap,

19   making it impossible for him to comply. *Id*. With respect to the orders to demonstrators to get out

20   of the street and return to the sidewalk, Plaintiff points to the lack of evidence that any of the officers

21   involved asked Plaintiff to get out of the street and also argues that there is no evidence that Plaintiff

22   heard any such order, even if it was given. *Id*.

23        Finally, Plaintiff argues that even if the officers had probable cause to arrest him, under Cal.

24   Penal Code § 853.6 they should have merely cited and released him rather than subjecting him to a

25   custodial arrest. *Id*. at 31-32. Under that provision, individuals arrested for misdemeanors are, with

26   limited exceptions, to be cited and released rather than taken into custody. *Id*. According to

27   Plaintiff, he is entitled to summary judgment on this issue because there is no evidence that any of

28   the exceptions to this requirement apply under the circumstances here. *Id*. He further asserts that

13

1   failure to follow state law governing arrests is relevant to both his state law claim for false arrest and

2   his section 1983 claim for unlawful detention. *Id*.

3        In their Opposition to Plaintiff's Motion, Defendants assert that Plaintiff's Motion should be

4   denied on the basis that it was filed late and exceeded the page limit set forth in the local rules.[4]

5   Opposition to Plaintiff's Motion at 9-11.  They also assert that Plaintiff is not entitled to summary

6   judgment on his false arrest claims as to Officer Bautista because there is no evidence that Officer

7   Bautista was involved in the conduct on which those claims are based. *Id*. at 23.  As to the

8   remaining SFPD Individual Defendants, Defendants reject Plaintiff's assertion that as a matter of

9   law there was no probable cause for arrest.

10        First, Defendants argue that even if Officer Shea did not see his motorcycle fall, he had

11   probable cause to arrest under Cal. Penal Code § 594 based on his reasonable belief that Plaintiff

12   knocked the motorcycle over. *Id*. at 14.

13        Second, according to Defendants, the videotape shows that Plaintiff was not simply moving

14   away to avoid Officer Shea as he approached but rather, was running away from Officer Shea to

15   avoid arrest.  *Id*.  In doing so, Defendants argue, Plaintiff both prevented Officer Shea from

16   investigating the suspected vandalism and gave Defendants probable cause to arrest on a new

17   ground, for obstructing Officer Shea in carrying out his duties, in violation of Cal. Penal Code

18   § 148(a).  *Id*. at 14-15.  Defendants challenge Plaintiff's assertion that Officer Shea did not tell

19   Plaintiff to stop, citing to Officer Shea's testimony that he did order Plaintiff to stop, but they argue

20   that in any event, Cal. Penal Code § 148(a) does not require that an order be disobeyed.  *Id*. at 15.

21   Defendants also cite to testimony by Officers Reynoso and Cesari that Plaintiff resisted arrest by

22   tensing his arms, making it difficult to place flex cuffs on him, and by failing to "get down" in

23   response to commands by officers.  *Id*. (citing Flynn Decl., Ex. E (Reynoso Depo.) at 103-104 & Ex.

24   P (Cesari Depo.) at 22, 27-28, 35-37, 39).

25        Third, Defendants assert that there was probable cause under Cal. Penal Code § 148(a) based

26   on Plaintiff's interference with the arrest of Shepardson-Brewster.  *Id*. at 18.  They also assert that

27

28        [4]   The Court rejects this requests and notes that it has already issued an order accepting
Plaintiff's brief.

14

United States District Court

For the Northern District of California

1  pictures taken by Plaintiff's counsel and submitted in support of Plaintiff's Motion that purport to

2  show the distance between Plaintiff and Shepardson-Brewster at the time of the arrest are

3  inadmissible because Plaintiff's counsel will not be appearing as a witness at trial.  *Id*.

4          Fourth, Defendants argue that there was probable cause to arrest for violation of MPC § 22.

5  *Id*. at 17.  Defendants do not, however, address the question of whether any pedestrian was

6  obstructed by Plaintiff.

7          Fifth, Defendants argue there was probable cause under  Cal. Vehicle Code §2800(a) because

8  Plaintiff failed to obey various orders by Defendants, namely, the orders of unspecified SFPD

9  officers for protesters to return to the sidewalk, the order of Officer Shea for Plaintiff to stop, and the

10  orders by the arresting officers for Plaintiff to sit down.  *Id*. at 17-18.  Defendants assert that even if

11  Plaintiff did not actually hear the orders to return to the sidewalk, the officers had probable cause

12  with respect to his arrest for failure to obey this order because the arresting officers had heard other

13  officers give such orders.  *Id*. at 17.

14          Sixth, Defendants assert that there was probable cause under Vehicle Code § 21950(b),

15  prohibiting pedestrians from creating an "immediate hazard" by suddenly leaving the curb and

16  stepping in front of a moving vehicle.  *Id*. at 18-19.  They reject Plaintiff's position that the street

17  was blocked off to traffic and therefore there were no moving vehicles to create an "immediate

18  hazard," pointing to deposition testimony by Officer Lazar that at the time of the arrests on Market

19  Street, a police vehicle was heading down Market Street.[5]  *Id*.

20          Seventh, Defendants assert there was probable cause under Cal. Vehicle Code § 21955,

21  which requires pedestrians to stay in cross-walks while crossing the street.[6]  *Id*. at 19.

22          In addition to challenging Plaintiff's assertion that there was no probable cause for his arrest,

23  Defendants argue that they are entitled to qualified immunity with respect to the false arrest claim

24

25          [5]  Defendants do not appear to dispute that at the time of the arrests, the street was blocked off
    to  civilian traffic.  Rather, they note that "one of the videos show[s] cars lined up to try to get on Market
26  at the very time the incident is going on."  Opposition to Plaintiff's Motion at 19.

27          [6]  Although Defendants do not expressly reference Cal. Vehicle Code § 21955 in support of this
    argument in their Opposition, they do cite to that provision in support of the same argument in their
28  Motion.

15

**United States District Court**
For the Northern District of California

1   asserted under federal law (Claim One) on the basis of qualified immunity. *Id*. at 19-20. In

2   particular, they argue that even if the officers committed any of the alleged constitutional violations,

3   there is no case law that would have made it reasonably clear to the SFPD Individual Defendants

4   that under the circumstances of this case, their actions were unconstitutional.

5          Finally, Defendants reject Plaintiff's reliance on the cite-and-release provision, Cal. Penal

6   Code § 853.6. *Id*. at 21-22. As to the Federal claim for false arrest, Defendants assert that this state

7   law provision has no bearing on the analysis because its violation does not rise to the level of a

8   constitutional violation, as required to prevail on a Section 1983 claim. *Id*. at 21. As to the state law

9   claim, Defendants argue that the provision does not change the fact that probable cause is a complete

10  defense to false arrest, even where the infraction is only a misdemeanor. *Id*. at 22. Defendants also

11  argue that various exceptions to Cal. Penal Code § 853.6 allowed for a custodial arrest, namely, the

12  exceptions based on imminent endangerment to people or property, the likelihood that the conduct

13  will continue, and the existence of outstanding warrants. *Id*.

14         In his Reply, Plaintiff concedes that Officer Bautista was not involved in his arrest and

15  therefore, the false arrest claims fail against Officer Bautista. Plaintiff's (Corrected) Reply in

16  Support of Motion for Partial Summary Judgment ("Plaintiff's Reply") at 15. He rejects

17  Defendants' assertions, however, that there was probable cause under the statutory provisions

18  discussed above, repeating the arguments raised in his Motion. Plaintiff further asserts he is entitled

19  to summary judgment that there was no probable cause based on his failure to allow the officers to

20  handcuff him because Defendants did not address this argument in their Opposition. *Id*. at 12.

21  Similarly, he argues that Defendants conceded there is no probable cause under MPC § 22(a) by

22  failing to address that provision in their Opposition.[7] *Id*. at 11-12. As to Defendants' assertion of

23  qualified immunity as to the Individual Officer Defendants, Plaintiff asserts that the right to be free

24  from arrest without probable cause is a clearly established right and therefore, there is no qualified

25  immunity. *Id*. at 12. Finally, Plaintiff rejects Defendants' assertion that the cite-and release

26  _____

27         [7] Plaintiff erroneously refers to this provision in one heading of the Reply brief as MPC § 21
    rather than § 22. This appears to be a typographical error. As noted above, Defendants do, in fact,
    assert that there was probable cause to arrest under MPC § 22 in their Opposition to Plaintiff's Motion.

28  *See* Defendant's Opposition to Plaintiff's Motion at 17.

United States District Court

For the Northern District of California

1    provision, Cal. Penal Code § 853.6, does not apply to his false arrest claims. *Id*. at 13-15.  As to the

2    federal claim, he argues that state law arrest procedures are relevant to the Fourth Amendment

3    analysis. *Id*.  As to the state law claim, he argues that the exceptions do not apply and moreover,

4    that the officers did not comply with the requirement that reasons for non-release under the cite-and

5    release statute must be documented in writing. *Id*.

6                   **2.    Defendants' Motion**

7           In their Motion, Defendants seek summary judgment on each of Plaintiff's claims as to at

8    least some, and sometimes all, Defendants.  First, with respect to the claims for false arrest under

9    state and federal law (Claims One and Two), Defendants repeat the arguments made in their

10   Opposition to Plaintiff's Motion regarding the existence of probable cause.  In particular, they assert

11   that, as a matter of law, there was probable cause to arrest Plaintiff for a number of violations,

12   including vandalism (Cal. Penal Code § 594(a)), resisting arrest (Cal. Penal Code § 148(a)), failure

13   to obey the orders of police officers to return to the sidewalk (Cal. Vehicle Code §§ 2800(a) and Cal.

14   Vehicle Code § 21950), and crossing outside of a crosswalk (Cal. Vehicle Code § 21955).[8]

15   Defendants' Motion at 11-12.

16          In addition, Defendants assert that the false arrest claims should be dismissed against Officer

17   Bautista because there is no evidence that Officer Bautista was involved in any way in the arrest.  *Id*.

18   at 12-13.  Further, Defendants argue, the state law claim for false arrest – and indeed, all state law

19   claims against Officer Bautista – fail because Plaintiff did not file a tort claim naming Officer

20   Bautista, as required under Cal. Gov't Code §§ 905, 910 and 950.2 as a prerequisite for suing a

21   public entity.[9]  *Id*. at 13.

22

23   _____

24          [8]  In the Motion, Defendants cite to Cal. Vehicle Code § 21955 (the cross-walk provision) but
     not Cal. Vehicle Code § 21950 (prohibiting the creation of an immediate hazard by stepping off the curb
25   in front of a moving vehicle) in support of the assertion that there was probable cause because "Officer
     Reynoso saw plaintiff in the middle of the street while officers were ordering the crowd to get on the
26   sidewalk."  Motion at 12.  The Court construes Defendants' Motion as asserting the existence of
     probable cause under both provisions.

27          [9]  Defendants do not dispute, however, that Plaintiff complied with this requirement as to all of
     the other Defendants. Defendants' Motion at 14; *see also* Declaration of Matthew Rothschild in Support
28   of Defendants' Motion for Summary Judgment ("Rothschild Decl."), Ex. A (Plaintiff's tort claim).

                                         17

United States District Court

For the Northern District of California

1    With respect to the federal false arrest claim only (Claim One), Defendants also assert that

2    the SFPD Individual Defendants are entitled to qualified immunity because, under the circumstances

3    here, it would not have been clear to a reasonable officer that his conduct was unlawful. *Id.* at 13-

4    14.

5    Second, Defendants argue that Plaintiff's federal law claim for use of excessive force (Claim

6    Three) fails as to Officers Lazar, Hamilton, Bautista and Delfin.[10]  *Id.* at 14-17.  As to Officers Lazar

7    and Hamilton, Defendants assert Plaintiff has admitted in his interrogatory responses  that these

8    officers did not use any force on him that was excessive.  *Id.* at 15.  As to Officer Bautista (against

9    whom only a federal law claim for excessive force is asserted), Defendants assert that the excessive

10   force claim must fail because it is undisputed that Bautista did not touch Plaintiff, even if he swung

11   his baton at him, and such conduct does not rise to the level of a seizure under the Fourth

12   Amendment.  *Id.*

13   With respect to Delfin, Defendants argue that the excessive force claim fails for two reasons.

14   First, they argue that the threshold for establishing excessive force is higher than for the Arresting

15   Officers because Delfin took Plaintiff's fingerprints after Plaintiff was already in custody.

16   Therefore, Defendants argue, Plaintiff must establish that Delfin's acts were taken "maliciously and

17   sadistically for the very purpose of causing harm" in violation of the Eighth Amendment.  *Id.* at 16.

18   In light of this standard, Defendants assert, Plaintiff's evidence regarding Delfin's alleged use of

19   force is so inadequate as to render the claim frivolous.  *Id.* at 16-17.  Second, Defendants argue in a

20   footnote that Delfin is entitled to qualified immunity as to the § 1983 excessive force claim.  *Id.* at

21   17 n. 7.

22   Third, Defendants assert that Delfin is entitled to dismissal of the state law excessive force

23   claim (Claim Four) because Delfin is immune from liability under Cal. Gov't Code § 821.6 and Cal.

24

25       [10]  The caption of Claim Three lists as Defendants Officers Shea, Reynoso, Brown, Smalley,
26   Cesari, Bautista and Delfin.  It does not specifically name Lazar and Hamilton.  Defendants construe
     the complaint as asserting this claims against Lazar and Hamilton as well, however, because the text of
27   the claim states that it is asserted against "the SFPD Defendants, and each of them (except Mel
     Bautista)." SAC at 7.  Defendants concede that material disputes of fact as to the alleged use of force
28   by Officers Shea, Brown, Smalley, Reynoso, and Cesari ("the Arresting Officers") preclude summary
     judgment on Plaintiff's excessive force claims against those Defendants.  *Id.* at 15.

United States District Court

For the Northern District of California

1   Penal Code § 298(c).  *Id*. at 17-18.

2         Fourth, Defendants assert that Plaintiff's § 1983 claim brought under the First Amendment

3   (Claim Five) fails because there is no evidence that the officers who arrested Plaintiff did so with an

4   intent to retaliate against him based on his exercise of his First Amendment rights.  *Id*. at 18.  They

5   note that other journalists were "milling about" the arrest scene without being bothered.  *Id*.  In

6   addition, Defendants assert that they are entitled to qualified immunity on this claim.  *Id*.  They

7   acknowledge that the Ninth Circuit held in 2006 that a plaintiff can establish First Amendment

8   retaliation based on retaliatory animus *even if* the arresting officer had probable cause.  *Id*. (*citing

9   Skoog v. County of Clackamas*, 469 F.3d 1221, 1233 (9th Cir. 2006)).  Defendants assert that this

10   rule was not clearly established prior to the *Skoog* decision, however, and therefore, the Individual

11   SFPD Defendants are entitled to qualified immunity as to such a claim arising from a 2004 arrest.

12   *Id*. at 19-20.

13         Fifth, Defendants assert that Plaintiff's claim for retaliation based on his exercise of his free

14   speech rights under Art. I, § 2 of the California Constitution (Claim Six) fails because California

15   courts have not recognized a private cause of action under this provision.  *Id*. at 20.

16         Sixth, Defendants argue that Plaintiff's § 1983 claim for deliberate indifference to medical

17   needs in violation of the Fourteenth Amendment (Claim Seven) fails as a matter of law.  *Id*. at 20-22.

18   With respect to the Individual SFPD Defendants, they argue that there is evidence only that Officers

19   Lazar, Reynoso, Cesari, and Smalley were aware that Plaintiff suffered injuries during the arrest.  *Id*.

20   at 21.  Therefore, the remaining SFPD Individual Defendants – Brown, Shea, Hamilton, and Bautista

21   – who were unaware of Plaintiff's injuries, cannot be liable on this claim.  *Id*.  As to the SFPD

22   Officers who were aware that Plaintiff was hurt, Defendants argue, the evidence shows that their

23   constitutional obligations were satisfied when Officer Lazar called a paramedic.  *Id*.  As to Officer

24   Delfin, Defendants assert that they are entitled to summary judgment on this claim because Plaintiff

25   has not presented evidence that he had a serious injury or that Delfin knew he had a serious injury.

26   *Id*. at 22.

27         Seventh, Defendants assert that Plaintiff's state law civil rights claim under the Bane Act

28   (Claim Nine) fails on several grounds.  *Id*. at 23-24.  As to Defendants Lazar and Shea, the officers

19

**United States District Court**
For the Northern District of California

1    who charged Plaintiff, Defendants argue that there is no evidence that either of them interfered

2    through threats, intimidation and coercion with the exercise of Plaintiff's rights under the United

3    States Constitution or the California Constitution. *Id*. at 23. *Id*. These two officers are also

4    immune, Defendants argue, under Cal. Penal Code § 836.5(b), which bars liability "arising out of

5    any arrest that is lawful or that the public officer or employee, at the time of the arrest, had

6    reasonable cause to believe was lawful." *Id*. at 24. The Bane Act Claim against Officer Bautista

7    should be dismissed, Defendants argue, because Plaintiff did not comply with the Government Tort

8    Claims Act. *Id*. at 23. Delfin is immune, Defendants assert, under Cal. Gov't Code § 821.6 and Cal.

9    Penal Code § 298(c)(1). *Id*.

10           Eighth, Defendants argue that Plaintiff's federal common law conspiracy claim (Claim Ten)

11   fails as to Delfin and Bautista because Plaintiff admits they were not involved in any conspiracy. *Id*.

12   at 22. They also argue that Plaintiff's claim fails because he did not assert it under 42 U.S.C. §

13   1985, which is the customary cause of action for conspiracies alleged under § 1983. *Id*. Even if he

14   had, Defendants assert, the claim fails because Plaintiff has pointed to no evidence showing a

15   meeting of the minds to violate his rights. *Id*.

16           Finally, Defendants seek summary judgment on Plaintiff's negligence claim (Claim Eleven)

17   on several grounds. *Id*. at 24-25. As to the City and County of San Francisco, Defendants argue that

18   Plaintiff's claim, to the extent it is based on negligent hiring, retention and supervision, should be

19   dismissed because such a claim does not exist, under California law, where the employer defendant

20   has admitted that the individuals whose conduct is at issue were acting within the course and scope

21   of their employment. *Id*. at 25. In addition, Defendants assert the claim should be dismissed as to

22   the City and County of San Francisco because Plaintiff took no discovery on that question. *Id*.

23           With respect to the negligence claim against Officer Bautista, that claim fails, Defendants

24   argue, because Plaintiff did not comply with the Government Tort Claims Act. *Id*. at 24.

25           With respect to the negligence claim against Delfin, defendants argue the claim fails because

26   he is immune from liability under Cal. Gov't Code § 821.6 and Cal. Penal Code § 298(c)(1). *Id*.

27   Similarly, Defendants assert that the Charging Officers (Lazar and Hamilton) are immune under Cal.

28   Penal Code § 836.5(b). *Id*.

United States District Court

For the Northern District of California

1    In his Opposition to Defendants' Motion, Plaintiff does not oppose summary judgment as to

2    the following: 1) the false arrest claims (Claims One and Two) against Officer Bautista only; 2) the

3    excessive force claims (Claims Three and Four) against Officers Hamilton and Lazar only; 3) the

4    state law claim for retaliation based on Plaintiff's exercise of his free speech rights (Claim Six); 4)

5    the claim for deliberate indifference to medical needs (Claim Seven) in its entirety; 5) the negligence

6    claim (Claim Eleven) against the City and County of San Francisco only.  Opposition to Defendants'

7    Motion at 1, 27.  Plaintiff's arguments as to the remaining claims on which Defendants seek

8    summary judgment are summarized below.

9    First, Plaintiff rejects Defendants' assertions regarding the existence of probable cause in

10   support of the false arrest claims (Claims One and Two), as discussed above.  *Id*. at 16-18.  He also

11   argues that Defendants' qualified immunity argument fails as to these claims because the right to be

12   free from arrest without probable cause is clearly established and moreover, there are material

13   disputes of fact as to the question of qualified immunity.  *Id*. at 18-19.

14   Second, Plaintiff argues that his excessive force claims (Claims Three and Four) against

15   Officer's Bautista and Delfin should survive summary judgment.  *Id*. at 20-26.  As to Officer

16   Bautista, Plaintiff asserts that there was a Fourth Amendment seizure, as required to prevail on a

17   claim for excessive force under § 1983, because Plaintiff had to duck to avoid being hit by Officer

18   Bautista's baton.  *Id*. at 20-21.  In the alternative, Plaintiff seeks leave to amend this § 1983 claim to

19   allege a violation of the Fourteenth Amendment based on Officer Bautista's conduct.  *Id*. at 21.

20   As to the § 1983 excessive force claim against Delfin, Plaintiff rejects Defendants'

21   contention that the proper standard is that which is applied to prison inmates, requiring a plaintiff to

22   demonstrate that the defendant acted "maliciously and sadistically."  *Id*. at 22.  Rather, Plaintiff

23   asserts, a lower threshold applies because Plaintiff had not been arrested pursuant to a warrant and

24   had not yet been arraigned.  *Id*.  Under this standard, there are material disputes of fact because there

25   is evidence that Plaintiff told Delfin that his thumb hurt and asked Delfin not to continue with the

26   fingerprinting.  *Id*. at 22-23.  Again, Plaintiff argues in the alternative that he should be permitted to

27   replead this § 1983 claim against Delfin under the Fourteenth Amendment.  *Id*. at 24.  Plaintiff

28

United States District Court

For the Northern District of California

1  rejects Defendants' assertion that Delfin is entitled to qualified immunity as to the federal excessive

2  force claim.  *Id*. at 26.

3          As to the state law claim for battery (the counterpart to the federal excessive force claim)

4  Plaintiff rejects Defendants' assertion that Delfin is entitled to immunity under Cal. Penal Code

5  § 821.6, asserting that under California law, this provision does not apply to battery claims but rather

6  was intended to immunize officials only from malicious prosecution claims.  *Id*. at 25.  Plaintiff also

7  rejects Defendants' reliance on Cal. Penal Code § 298(c)(1) in support of their claim that Delfin is

8  immune.  *Id*. at 25-26.  According to Plaintiff, that provision does not apply because Delfin did not

9  follow "medically accepted procedures" or "standard professional practices."  *Id*.

10         Third, Plaintiff argues that his § 1983 claim based on the First Amendment is viable because

11  there is evidence from which a reasonable jury could conclude that the desire of the SFPD Individual

12  Defendants to deter Plaintiff from videotaping the arrest of another individual was a "substantial or

13  motivating factor."  *Id*. at 27-28.[11]

14         Fourth, Plaintiff argues that Defendants are not entitled to summary judgment on his Bane

15  Act claim (Claim Nine).  *Id*. at 30.  As to Delfin and Bautista, Plaintiff argues that these claims are

16  viable for the same reasons the "underlying claims" are viable.[12]  *Id*.  As to Charging Officers Lazar

17  and Hamilton, Plaintiff rejects Defendants' assertions that they cannot be liable under the Bane Act,

18  arguing that by charging Plaintiff, these officers' conduct was a substantial factor in the violation,

19  thus supporting liability.  *Id*. at 30-31.

20         Fifth, Plaintiff challenges Defendants' position that there is no claim for federal common law

21  conspiracy. *Id*. at 28-29.  He further asserts that there is sufficient evidence to give rise to a material

22  dispute of fact as to whether there was a meeting of the minds to achieve the conspiracy's objective.

23  *Id*. at 29.

24

25

---

26         [11] Plaintiff does not directly address Defendants' argument that the SFPD Individual Defendants
   are entitled to qualified immunity on this claim.

27

28         [12] Plaintiff does not directly address Defendants' argument that the claim against Bautista fails
   because Plaintiff failed to comply with the Government Tort Claims Act.

United States District Court

For the Northern District of California

1    Sixth, Plaintiff argues that his negligence claims should survive against all of the individual

2    Defendants because Cal. Gov't Code § 821.6 does not bar negligence claims against public officials

3    and it is established that a plaintiff can proceed on both a negligence theory and an assault and

4    battery theory based on the same conduct.  *Id* at 31.

5    **III.    ANALYSIS**

6        **A.    Legal Standard**

7        Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be

8    rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

9    together with affidavits, if any, show that there are no genuine issues as to any material fact and that

10   the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine"

11   issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for

12   the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

13       In order to prevail, a party moving for summary judgment must show the absence of a

14   genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or

15   to a defense on which the nonmoving party will bear the burden of persuasion at trial.  *Celotex Corp.*

16   *v. Catrett*, 477 U.S. 317, 323 (1986); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210

17   F.3d 1099 (9th Cir. 2000).  Once the movant has made this showing, the burden shifts to the party

18   opposing summary judgment to "designate specific facts showing there is a genuine issue for trial."

19   *Celotex*, 477 U.S. at 323.  To establish a "genuine" issue of fact when opposing summary judgment,

20   a plaintiff must "produce at least some significant probative evidence tending to support" the

21   allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

22       **B.    The False Arrest Claim under 42 U.S.C. § 1983 (Claim One)**

23       Both Plaintiff and Defendants assert that they are entitled to summary judgment on Plaintiff's

24   federal false arrest claim.  Plaintiff asserts that, as a matter of law, there was no probable cause and

25   further, the officers are not entitled to qualified immunity.  Conversely, Defendants assert that, as a

26   matter of law, they had probable cause to arrest Plaintiff and that even if they did not, they are

27   entitled to qualified immunity.  The Court concludes that Defendants are entitled to summary

28   judgment on this claim as to all of the SFPD Individual Defendants.

United States District Court

For the Northern District of California

1          **1.      Fourth Amendment Requirements**

2          In cases where officers make an arrest without a search warrant, the Fourth Amendment

3   imposes limitations on both the initial stop and the subsequent arrest.  *See Terry v. Ohio*, 392 U.S. 1,

4   17 n.15 (concluding that "the Fourth Amendment governs all intrusions by agents of the public upon

5   personal security" but that reasonableness under the Fourth Amendment depends on the "scope of

6   the particular intrusion, in light of all of the exigencies of the case").

7          In *Terry*, the Supreme Court held that "the police can stop and briefly detain a person for

8   investigative purposes if the officer has a reasonable suspicion supported by articulable facts that

9   criminal activity 'may be afoot,' even if the officer lacks probable cause."  *United States v. Sokolow*,

10  490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30)).  Whether the duration of such a stop is

11  reasonable turns on "whether the police diligently pursued a means of investigation that was likely

12  to confirm or dispel their suspicions quickly" while they detained the individual.  *United States v.*

13  *Sharpe*, 470 U.S. 675, 686 (1985).  Courts are warned, however, that they "should not indulge in

14  unrealistic second-guessing."  *Id.*  "The question is not simply whether some other alternative was

15  available, but whether the police acted unreasonably in failing to recognize or to pursue it."  *Id.*

16         Once officers have decided to arrest an individual, the Fourth Amendment imposes the more

17  demanding requirement that the officers have probable cause.  *See United States v. Sokolow*, 490

18  U.S. at 7 ("the level of suspicion for a *Terry* stop is obviously less demanding than that for probable

19  cause").  The Supreme Court has held that probable cause is "knowledge or reasonably trustworthy

20  information sufficient to lead a person of reasonable caution to believe that an offense has been or is

21  being committed by the person being arrested."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  "While

22  conclusive evidence of guilt is of course not necessary under this standard to establish probable

23  cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'"  *United*

24  *States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (quoting *McKenzie v. Lamb*, 738 F.2d 1005,

25  1008 (9th Cir. 1984)).

26         The standard for judging probable cause is objective; the existence of probable cause does

27  not depend on the subjective intentions of the arresting officers.  *Id.* (citing *Devenpeck v. Alford*, 543

28  U.S. 146, 153 (2004)).  Thus, "probable cause supports an arrest so long as the arresting officers had

**United States District Court**
For the Northern District of California

probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *Edgerly v. City and County of San Francisco*, — F.3d —, 2007 WL 2034040 (9th Cir. July 17, 2007) at *4 (citing *Devenpeck*, 543 U.S. at 153-155). Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to "the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually" makes the arrest. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). Although the officers need not have probable cause for every element of the offense, they must have probable cause for specific intent where that is a required element of the crime. *Edgerly*, 2007 WL 3024040 at *3.

Finally, in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Supreme Court held that an officer who observes criminal conduct may arrest the offender without a warrant, even if the offense carries only a minor penalty. 532 U.S. 318 (2001). In *Atwater*, the Court held that a custodial arrest for a first-time seat belt violation, which included taking the defendant back to the police station and detaining her there for an hour, was not an unreasonable seizure under the Fourth Amendment, even though the violation was only a misdemeanor under the relevant state law. *Id*. at 323. The Court started its analysis by noting that the applicable state law expressly authorized arrest for the particular offense at issue. *Id*. The Court went on to examine at length the question of whether the common law supports the conclusion that the Fourth Amendment does not allow for arrest on the basis of minor infractions. Concluding that it does not, the Court announced at the end of its analysis the broad rule that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id*. at 353.

In reliance on *Atwater*, at least two district courts have held that custodial arrest does not violate the Fourth Amendment *even* where California law provides that the officers should only have cited and released the defendant. *See Patterson v. Runnells*, 288 F. Supp. 2d 1092, 1103 (C.D. Cal. 2003); *Yezek v. Mitchell*, 2007 WL 61887 (N.D. Cal. Jan. 8, 2007). In *Patterson*, a petitioner seeking a writ of habeas corpus argued that his Fourth Amendment rights had been violated because

United States District Court

For the Northern District of California

1    the incriminating evidence had been seized after a custodial arrest that was illegal under California's

2    cite-and-release statute, Cal. Penal Code § 853.6.  288 F. Supp. 2d at 1103.  The court assumed for

3    the purposes of considering the argument that the custodial arrest was illegal under California law

4    but concluded that under *Atwater*, the state law violation did not violate the Fourth Amendment.  *Id.*

5    at 1104.

6          In *Yezek*, the plaintiff brought a civil rights action under 42 U.S.C. §1983 against a California

7    Highway Patrol officer, alleging that the officer violated his Fourth Amendment rights when he

8    detained the plaintiff (who was wearing attire reflecting membership in the Hell's Angel's) on a

9    traffic stop in order to photograph him.  2007 WL 61887, at *1.  The plaintiff did not dispute that he

10    was exceeding the speed limit when he was stopped.  *Id*. at *6.  The defendant sought summary

11    judgment on the basis that he did not violate the Fourth Amendment by photographing the plaintiff

12    because, under *Atwater*, he could have arrested the plaintiff and photographing the plaintiff was less

13    intrusive than arresting him.  *Id.*

14          The court in *Yezek* held that *Atwater* did not apply because the relevant inquiry was what the

15    defendant actually did, not what he could have done.  *Id*.  Instead, the court addressed the question

16    under the case law that requires that *Terry* stops must be reasonable in duration, on which the court

17    found that there were disputed facts.  *Id.* at *8.  Nevertheless, the court in a footnote rejected

18    Plaintiff's attempt to rely on Cal. Penal Code § 853.5, which provides that officers should only cite

19    and release for minor traffic violations, noting that under *Atwater*, "mere violation of state statutes

20    does not render otherwise constitutional acts unconstitutional." *Id*. at *6 n.4.  Further, although the

21    court concluded that triable issues of fact remained regarding the reasonableness of the length of

22    detention, it went on to conclude that the officer was entitled to qualified immunity because he could

23    have reasonably believed his acts were constitutional under *Atwater*.

24          In *Yezek* , the court relied, in part, on *People v. McKay*, 27 Cal. 4th 601, 609-614 (2002) in

25    support of its conclusion that violation of state law provisions governing when an officer should

26    make an arrest does not give rise to a Fourth Amendment violation.  *Id*.  In that case, officers seized

27    methamphetamines from the defendant after he was arrested for riding the wrong way on a

28    residential street and the defendant sought to suppress this evidence under the Fourth Amendment.

United States District Court

For the Northern District of California

1    27 Cal. 4th at 606.  The California Supreme Court directly addressed whether violation of California

2    statutes limiting the circumstances under which a custodial arrest can be effected (including Cal.

3    Penal Code §§ 853.5 and 853.6) can give rise to a Fourth Amendment violation in light of the

4    Supreme Court's decision in *Atwater*.  It held that such violations did not make a warrantless arrest

5    unconstitutional, so long as there was probable cause for the arrest.  *Id*. at 618.

6           In the face of this authority is a line of Ninth Circuit cases that does not address *Atwater* or

7    *McKay* but appears to reach a contrary result.  *Edgerly v. City and County of San Francisco*,

8    — F.3d —, 2007 WL 2034040 (9th Cir. July 17, 2007); *Bingham v. City of Manhattan Beach*, 341

9    F.3d 939, 950 (9th Cir. 2003); *United States v. Mota*, 982 F.2d 1384, 1389 (9th Cir. 1993).  In

10   *United States v. Mota* (decided before *Atwater*), the Ninth Circuit held that if state law prohibits

11   arrest, then any search incident to such an arrest violates the Fourth Amendment.  982 F.2d at 1388-

12   89.  In that case, the defendant was arrested for a municipal code infraction for operating without a

13   business license – a crime for which an individual could only be arrested, under Cal. Penal Code

14   § 853.5, if he refused to present proof of his identity and sign a promise to appear.  *Id*.  A subsequent

15   search revealed counterfeit money.  *Id*. at 1385.  The Ninth Circuit held that although "the

16   application of the exclusionary rule in federal court should not be made to turn on state law . . . in

17   evaluating the appropriateness of excluding evidence seized by state officials pursuant to an

18   inventory search, federal courts must necessarily consider the lawfulness of the search as a matter of

19   state law." *Id*. at 1387.  On that basis, the Ninth Circuit held that the counterfeit money had been

20   seized in violation of the Fourth Amendment and therefore was inadmissible.  *Id*. at 1389.

21          The Ninth Circuit reiterated the principle articulated in *Mota* in *United States v. Bingham*, a

22   civil rights action brought under 42 U.S.C. § 1983 that was decided after *Atwater*.  In *Bingham*, the

23   court held that a custodial arrest for driving without a license violated the Fourth Amendment

24   because state law prohibited arrest for that offense.  *Id*. at 950.  The Ninth Circuit stated that "in

25   evaluating a custodial arrest executed by state officials, federal courts must determine the

26   reasonableness of the arrest in reference to state law governing the arrest."  *Id*. at 950 (citations

27   omitted).  The court further found that the officers were not entitled to qualified immunity on this

28   issue.  *Id*.  The court went on, however, to find that the officers were entitled to qualified immunity

27

**United States District Court**

For the Northern District of California

1   on an alternative ground because the officers had discovered an outstanding warrant prior to the

2   arrest and could have reasonably believed that it was lawful to arrest the plaintiff to verify the

3   warrant. *Id*. The Ninth Circuit in *Bingham* did not address or cite to *Atwater* anywhere in its

4   opinion.

5           Finally, in a case decided very recently by the Ninth Circuit, *Edgerly v. City and County of*

6   *San Francisco*, — F.3d —, 2007 WL 2034040 (9th Cir. July 17, 2007), the court again affirmed the

7   principle articulated in *Mota* and *Bingham*, citing *Bingham* with approval. In *Edgerly*, the court held

8   that the police did not have probable cause to take an individual into custody after arresting him

9   where the arrest was for an infraction. *Id*. at *5. In reaching this conclusion, the court relied on Cal.

10  Penal Code § 853.5, requiring that where a person is arrested for an infraction, he or she shall be

11  cited and released so long as the individual shows proof of identity and signs a promise to appear in

12  court. *Id*. The court went on to hold that the officers were not entitled to qualified immunity

13  because even assuming there was probable cause to believe the plaintiff had violated the provision,

14  they could not have reasonably believed they had probable cause to arrest him in light of Cal. Penal

15  Code § 853.5. *Id*. at *7. The court cited *Bingham* in support of this proposition. *Id*. The court did

16  not address either *Atwater* or the California Supreme Court's decision in *McKay*.

17                    **2.      Standard Governing Qualified Immunity**

18          Under the doctrine of qualified immunity, even if a constitutional violation occurred,

19  governmental officials are immune if their conduct "does not violate clearly established statutory or

20  constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

21  U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, courts

22  must first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts

23  alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194,

24  200 (2001). If not, the qualified immunity analysis ends here. *Id*. at 201. On the other hand, "if a

25  violation could be made out on a favorable view of the parties' submissions, the next sequential step

26  is to ask whether the right was clearly established." *Id*.

27          The inquiry as to this second question must be "particularized." *Id*. It is not enough that the

28  general rule is established. *Id*. Rather, "[t]he relevant dispositive inquiry in determining whether a

United States District Court

For the Northern District of California

1    right is clearly established is whether it would be clear to a reasonable officer that his conduct was

2    unlawful *in the situation he confronted*." *Id*. at 202 (emphasis added).  The Supreme Court has

3    cautioned that courts should afford "deference to the judgment of reasonable officers on the scene"

4    and should not use "20/20 hindsight vision." *Id*. at 205.  Thus, "[e]ven law enforcement officials

5    who 'reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'"

6    *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

7          Where a plaintiff asserts a Fourth Amendment violation based on the absence of probable

8    cause, the relevant inquiry with respect to the "clearly established" prong of the qualified immunity

9    analysis is "whether a 'reasonable officer could have believed that probable cause existed to arrest

10   the plaintiff.'"  *Sorgen v. City and County of San Francisco*, 2006 WL 2583683 (N.D. Cal. Sept. 7,

11   2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002)).

12                    **3.    Application of Principles to the Facts of this Case**

13         Defendants assert that probable cause exists in this case, as a matter of law, under a number

14   of specific criminal statutes, or at least, that the officers reasonably believed that probable cause

15   existed under at least one of these statutes, thus entitling them to qualified immunity on Plaintiff's

16   false arrest claim under § 1983.  They cite the following six provisions: 1) Cal. Penal Code § 594(a)

17   (malicious damaging of property); 2) Cal. Penal Code § 148(a) (willfully resisting or interfering with

18   arrest); 3) Cal. Vehicle Code § 21950(b) (creating immediate hazard by entering path of moving

19   vehicle); 4) Cal. Vehicle Code § 21955 (crossing street outside of crosswalk); 5) MPC § 22

20   (obstruction of a person); 6) Vehicle Code § 2800 (willfully refusing to comply with orders of police

21   officer).  Plaintiff argues that there is no probable cause under any of the provisions cited above.

22   The Court addresses each of these provisions below.[13]

23                          **a.    Cal. Penal Code § 594(a)**

24   California Penal Code § 594(a) provides as follows:

25              (a) Every person who maliciously commits any of the following acts
               with respect to any real or personal property not his or her own, in

26   _____

27         [13] In conducting this analysis, the Court need not address Officer Bautista because Plaintiff has
     conceded that Officer Bautista was not involved in the arrest and therefore has stipulated to the
28   dismissal of both the federal and state law false arrest claims against Officer Bautista.

                                                    29

1   cases other than those specified by state law, is guilty of vandalism:

2      (1) Defaces with graffiti or other inscribed material.

3      (2) Damages.

4      (3) Destroys.

5   Cal. Penal Code § 594(a).  Cal. Penal Code § 7(4) holds that "[t]he words 'malice' and 'maliciously'

6   import a with to vex, annoy, or injure another person, or an intent to do a wrongful act . . . ."

7      As noted above, where a statute includes a specific intent requirement, there must be

8   probable cause as to that intent.  Thus, to establish probable cause under this statute, Defendants

9   must point to undisputed evidence giving rise to  probable cause that Plaintiff pushed over Shea's

10  motorcycle with an intent to act wrongfully or vex or annoy another person.  The evidence on this

11  question is mixed however: Officer Shea testifies that he saw Plaintiff push the motorcycle over

12  while Plaintiff's video could reasonably be interpreted as showing that Officer Shea did not see

13  Plaintiff knock over the motorcycle, much less do so with malice.  Under these circumstances,

14  disputed facts remain that preclude summary judgment on the question of whether there was

15  probable cause under Cal. Penal Code § 594(a).

16     Defendants, however, assert that they are entitled to qualified immunity as to this crime.

17  Applying the two-part analysis laid out above, the first question the Court must ask in order to

18  resolve this question is whether the facts alleged by Plaintiff give rise to a constitutional violation.

19  Construing the evidence in the light most favorable to Plaintiff, as the Court is required to do in

20  making this inquiry, a reasonable jury could conclude based on the evidence in the record that the

21  officers lacked probable cause for arrest under Cal. Penal Code § 594(a) and therefore violated the

22  Fourth Amendment.  Next, the Court must determine whether the officers could reasonably (even if

23  mistakenly) have believed that there was probable cause to arrest Plaintiff for maliciously knocking

24  over the motorcycle *and* that arrest for that offense (rather than citation and release under California

25  Penal Code § 853.6) was reasonable in light of clearly established law.

26     With respect to the first question, the Court concludes that the officers could have reasonably

27  believed Plaintiff intentionally knocked over the motorcycle.  It is apparent from the evidence that

28  the situation was chaotic and that not all protesters were complying with police orders.  Some, like

United States District Court

For the Northern District of California

1   Shepardson-Brewster and the individual who pulled Shepardson-Brewster out of Officer Riorden's

2   grasp, appeared to be intentionally interfering with the officers' efforts to maintain order.  Even

3   under Plaintiff's view of the specific incident in question, Officer Shea turned around and saw

4   Plaintiff next to the motorcycle immediately after it had been pulled or pushed over.  Under these

5   circumstances, Officer Shea (whose knowledge is imputed to all of the arresting officers) could

6   reasonably have believed that Plaintiff intentionally knocked over the motorcycle and therefore, that

7   there was probable cause to believe Plaintiff had violate Cal. Penal Code § 594(a).

8       The second question the Court must address is whether it was reasonable for the officers to

9   arrest Burdett – rather than citing and releasing him – under clearly established law.  The Court

10  concludes that it was.  First, Cal. Penal Code § 853.6 (g) allows officers to book an arrested person

11  prior to release.[14]  The undisputed evidence indicates that this is what occurred here: Burdett was

12  detained for booking and then released.  At oral argument, Plaintiff did not challenge Defendants'

13  assertion that Plaintiff was released after being booked.  Thus, even assuming that state law is

14  relevant to the Fourth Amendment inquiry following *Atwater* – a question that has not been fully

15  resolved in this Circuit – it was reasonable for Defendants to believe that they could arrest Burdett

16  and detain him for booking rather than merely citing and releasing him.

17      In the alternative, the Court concludes that the officers could reasonably have believed that

18  Burdett could be arrested under subsection (i), which creates an exception to the cite-and-release

19  rule for situations in which "there was a reasonable likelihood the offense or offenses would

20  continue or resume, or that the safety of persons and property would be imminently endangered by

21  release of the person arrested."  Cal. Penal Code § 853.6(i)(7).  Under the circumstances here, even

22  construing the evidence in Plaintiff's favor, the Court concludes that the officers could have

23  reasonably (even if mistakenly) believed at the time Plaintiff's arrest that there was a reasonable

24

25      [14]  The Court notes that Defendants did not cite this particular subsection in their briefs.  While
    the Court generally declines to rule on arguments made for the first time at oral argument, this issue was
26  adequately (though barely) raised in the briefs to allow the Court to rule on it.  In particular, Defendants
    expressly argued in their briefs that Cal. Penal Code § 853.6 did not require the officers to cite and
27  release Plaintiff.  In any event, as discussed below, the Court concludes that the officers could have
    reasonably believed that  another exception to the cite and release law that *was* cited in Defendants'
28  briefs, subsection (i), also applied.

1    likelihood that Plaintiff would resume conduct that violated Cal. Penal Code § 594(a).  In particular,

2    to the extent an officer could have reasonably concluded – based on Burdett's proximity to the

3    motorcycle when it fell – that he had probable cause to believe Burdett had pushed the motorcycle

4    over, such an officer could also reasonably have believed, when taking into consideration the

5    ongoing demonstration and the tense and chaotic scene, that that same individual might engage in

6    further acts of vandalism if he were immediately released.

7         On these grounds, the Court finds that the SFPD Individual Defendant against whom this

8    claim is asserted (all of the SFPD Officers except Bautista) are entitled to qualified immunity on

9    Claim One.[15]

10              **b.    Cal. Penal Code § 148(a)**

11   California Penal Code § 148(a)(1) provides as follows:

12              Every person who willfully resists, delays, or obstructs any public
                officer, peace officer, or an emergency medical technician, as defined
13              in Division 2.5 (commencing with Section 1797) of the Health and
                Safety Code, in the discharge or attempt to discharge any duty of his
14              or her office or employment, when no other punishment is prescribed,
                shall be punished by a fine not exceeding one thousand dollars
15              ($1,000), or by imprisonment in a county jail not to exceed one year,
                or by both that fine and imprisonment.
16

17   Cal. Penal Code § 148(a)(1).  The word "willfully" implies "simply a purpose or willingness to

18   commit the act . . . .  It doesn't require any intent to violate law . . . ."  Cal. Penal Code § 7(1).

19        Here again, the evidence is in dispute.  Plaintiff testifies that he merely approached the

20   Shepardson-Brewster arrest scene to videotape and presents evidence that he was over 30 feet away

21   from that arrest.  He further testifies that he was not evading arrest when he moved away from

22

23        [15]  The Court acknowledges that Cal. Penal Code § 853.6 also contains a provision requiring that
     officers who invoke one of the exceptions to the general "cite and release" rule are required to file a
     form stating the reason for the arrest "with the arresting agency as soon as practicable."  Cal. Penal Code
24   § 853.6(i).  Plaintiff points out – and it appears to be undisputed  – that no such form was filed here.
     Even under *Bingham* and *Edgerly*, however, the Court does not find that this state law violation can
25   deprive the officers of qualified immunity: The inquiry is whether the officers acted reasonably
     (applying an objective standard) *when they arrested him*.  So long as the officers could have reasonably
26   believed at that time that one of the exceptions to § 853.6 applied, the fact that they subsequently failed
     to fill out required paperwork does not make their initial decision to arrest an individual unreasonable.
27   Conversely, the Court rejects Defendants' reliance on another exception in §  853.6, allowing arrest
     where there are outstanding warrants for the same reason: there is no evidence that the officers were
28   aware at the time they made the decision to arrest Plaintiff that any outstanding warrants existed.

United States District Court
For the Northern District of California

1  Officer Shea but merely avoiding being crashed into, pointing to his own video footage, which he

2  says shows that Officer Shea was on a collision course with Plaintiff and further, that Officer Shea

3  did not order him to stop.  Finally, he denies tensing up during handcuffing and testifies that he was

4  unable to immediately drop to the ground because he was tangled in cords and held by both arms.  In

5  contrast, Defendants point to Officer Reynoso's testimony that he saw Plaintiff run directly to the

6  area where the Shepardson-Brewster arrest was occurring and interfere, Officer Shea's testimony

7  that he told Plaintiff to stop as Plaintiff moved away from him, and Officer Reynoso's testimony that

8  Plaintiff tensed up when officers were trying to put handcuffs on him and didn't comply when he

9  was told to drop to the ground.

10        Based on this contradictory evidence, the Court concludes that whether there was probable

11  cause to believe that Plaintiff willfully interfered with the Shepardson-Brewster arrest or willfully

12  resisted his own arrest depends on resolution of factual questions that must be decided by the jury.

13  Again, however, the Court finds that the officers are entitled to qualified immunity as to this

14  violation.

15        First, the officers could reasonably have believed that there was probable cause under §

16  148(a), at least as to Plaintiff's own arrest.  It is undisputed (and clearly shown in the videotaped

17  footage) that as Officer Shea ran towards Plaintiff, Plaintiff moved away from Officer Shea.  Even if

18  it is true that Plaintiff was merely trying to avoid being "body-slammed" when he moved away from

19  Officer Shea, a reasonable officer could have interpreted Plaintiff's actions as an attempt to run

20  away.  Second, as in the case of the vandalism provision discussed above, the Court concludes that

21  state law permitted the officers to book Plaintiff before releasing him and therefore, the officers

22  acted reasonably in light of clearly established state law.  On this basis, the Court finds that the

23  SFPD Individual Defendants (with the exception of Bautista, against whom Plaintiff has agreed to

24  dismiss Claim One) are entitled to qualified immunity on Claim One.

25              **c.    Cal. Vehicle Code § 21950(b)**

26  California Vehicle Code § 21950(b) provides as follows:

27        This section does not relieve a pedestrian from the duty of using due
          care for his or her safety. No pedestrian may suddenly leave a curb or
28        other place of safety and walk or run into the path of a vehicle that is

33

United States District Court

For the Northern District of California

1    so close as to constitute an immediate hazard. No pedestrian may
2    unnecessarily stop or delay traffic while in a marked or unmarked
     crosswalk.

3    Cal. Vehicle Code § 21950(b).  The Court concludes that Plaintiff is entitled to summary judgment

4    as to the question of whether probable cause exists under this statute: although there is evidence in

5    the record that police vehicles had access to the scene of Plaintiff's arrest, Defendants have pointed

6    to no evidence that any of the officers on the scene observed Plaintiff step in the path of any vehicle.

7    Nor have Defendants pointed to any evidence that might support a finding that any officer on the

8    scene had probable cause to believe Plaintiff had stepped into the path of a vehicle that was "so close

9    as to constitute an immediate hazard."  The mere fact that there were some police vehicles in the

10   general vicinity is not sufficient to create a factual dispute as to the existence of probable cause

11   under this provision.  Further, there is no evidence in the record that would support a *reasonable*

12   *belief* that Plaintiff had violated this provision.  Therefore, Defendants also are not entitled to

13   qualified immunity as to this provision.

14                      **d.      Cal. Vehicle Code § 21955**

15        California Vehicle Code § 21955 provides as follows:

16            Between adjacent intersections controlled by traffic control signal
              devices or by police officers, pedestrians shall not cross the roadway at
17            any place except in a crosswalk.

18   Cal. Vehicle Code § 21955 ("the jay-walking provision").  Here, the undisputed evidence shows that

19   Plaintiff was not in a cross-walk but rather in the street, outside of the cross-walk.  Although

20   Plaintiff suggests that he was merely in a "parking turn-out," he has cited no authority that the

21   California Vehicle Code makes such a distinction.  Thus, it is clear, as a matter of law, that there *was*

22   probable cause for the initial arrest as to violation of the jay-walking provision.  Further, for the

23   reasons stated above, the Court concludes that the officers could reasonably have believed that arrest

24   was appropriate rather than citation and release.  Because the officers had probable cause *and* are

25   entitled to qualified immunity as to this provision, the SFPD Individual Defendants are entitled to

26   qualified immunity on Claim One.

27                      **e.      MPC § 22**

28        MPC § 22 provides as follows:

                                            34

1
2
3
4
5
6
7

> (a)      no person shall willfully and substantially obstruct the free passage of any person or persons on the street, sidewalk, passageway or other public place.
> (b)      Penalty.  Any person who shall violate the provisions of this Section shall be guilty of an infraction, the penalty for which shall be a fine of not less than $50 nor more than $500.
> (c)      Exceptions. (1) It is not intended that this Section shall apply where its application would result in interference with or inhibition of any exercise of the constitutionally protected right of freedom of speech or assembly; and (2) nothing contained herein shall be deemed to prohibit persons from sitting on public benches or other public facilities provided for such purpose.

8    MPC § 22.  Defendants have pointed to no evidence that any of the officers had probable cause to

9    believe that Burdett was "obstructing the free passage of any person," much less that he was doing

10   so willfully.  Therefore, Plaintiff is entitled to summary judgment that there was no probable cause

11   under this provision.  Further, there is no evidence that would support a reasonable belief that

12   Plaintiff that there was probable cause to arrest Plaintiff under this provision.  Therefore, Defendants

13   are not entitled to qualified immunity as to this provision.

14                    **f.       Cal. Vehicle Code § 2800**

15            California Vehicle Code § 2800 provides, in relevant part, as follows:

16
17
18

> (a) It is unlawful to willfully fail or refuse to comply with a lawful order, signal, or direction of a peace officer . . .when that peace officer is in uniform and is performing duties pursuant to any of the provisions of this code, or to refuse to submit to a lawful inspection pursuant to this code.

19   Cal. Vehicle Code § 2800.  As discussed above in connection with Cal. Penal Code § 148(a), the

20   evidence is mixed as to whether Plaintiff actually failed to comply with an order of an officer,

21   including orders to get away from the arrest (which Plaintiff may not have heard) and orders for

22   Plaintiff to get down (which may have been impossible for Plaintiff to comply with).  As a result,

23   neither party is entitled to summary judgment on the question of probable cause under this provision.

24   Again, though, the officers are entitled to qualified immunity because they could have reasonably

25   believed that Plaintiff heard their orders to get away from the Shepardson-Brewster arrest or that

26   Plaintiff's failure to get down was willful rather than involuntary.  They are entitled to this immunity

27   even if, with the benefit of hind-sight, it turns out that Plaintiff did not hear the former order and was

28

35

United States District Court

For the Northern District of California

1   unable to comply with the latter.  Further, for the reasons stated above, the Court concludes that the

2   officers could reasonably have believed that arrest was appropriate rather than citation and release.

3                       **g.**          **Conclusion**

4         For the reasons stated above, the Court concludes that although Plaintiff is correct that there

5   was no probable cause as to two of the violations cited by Defendants – Cal. Vehicle Code

6   § 21950(b) and MPC § 22 – the SFPD Individual Defendants are, nonetheless, entitled to summary

7   judgment on Claim One for three reasons.  First, Plaintiff has agreed to dismiss this claim as to

8   Officer Bautista.  Second, as to the remaining SFPD Individual Defendants, there was probable

9   cause to arrest Plaintiff under Cal. Vehicle Code § 21955.  Third, these officers are entitled to

10  qualified immunity under Cal. Penal Code §§ 594(a) and 148(a) and Cal. Vehicle Code §§ 21955

11  and 2800.  Accordingly, Defendants' Motion is GRANTED as to Claim One, which is dismissed as

12  to all Defendants with prejudice.

13          **C.**        **The State Law False Arrest Claim (Claim Two)**

14        Under California law, "[t]here shall be no civil liability on the part of, and no cause of action

15  shall arise against any public officer or employee acting pursuant to subdivision (a) [permitting

16  warrantless arrest with probable cause] and within the scope of his or her authority for false arrest or

17  false imprisonment arising out of any arrest that is lawful or that the public officer or employee, at

18  the time of the arrest, had reasonable cause to believe was lawful."  Cal. Penal Code § 836.5(b).  As

19  discussed above in connection with the question of qualified immunity, the Individual Officer

20  Defendants reasonably believed at the time of the arrest that the arrest was lawful under several

21  statutory provisions, both because they could have reasonably believed there was probable cause *and*

22  because they could have reasonably believed that an exception to Cal. Penal Code § 853.6 applied.

23  Accordingly, this claim fails as a matter of law as to all SFPD Individual Defendants.  Defendants'

24  Motion is GRANTED as to Claim Two, which is dismissed with prejudice as to all Defendants.

25          **D.**        **The Excessive Force Claim under § 1983 (Claim Three)**

26                  **1.**        **Officer Bautista**

27        Defendant asserts that Plaintiff's federal excessive force claim fails as to Officer Bautista

28  because there was no Fourth Amendment seizure, as a matter of law.  The Court agrees.  Under

United States District Court

For the Northern District of California

1  *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989), a seizure does not occur until the officers'

2  conduct results in an actual termination of the suspect's freedom of movement.  In contrast, mere

3  pursuit of a suspect does not rise to the level of a seizure.  *Id.*  Similarly, swinging a baton at an

4  individual, as in this case, is not a seizure, even if the individual must duck to avoid being struck by

5  the baton.

6          Plaintiff asks that he be permitted to replead this claim as a violation of the Fourteenth

7  Amendment due process clause.  At this late stage of the case, the Court declines to permit such an

8  amendment and notes that the only justification offered for failing to assert this claim earlier in the

9  case is Plaintiff's desire to avoid summary judgment.  *See Oncology Therapeutics Network*

10  *Connection v. Virginia Hematology Oncology PLLC*, 2006 WL 334532 (N.D. Cal. Feb. 10, 2006)

11  (concluding that under Ninth Circuit law, the district court may in exercising its discretion with

12  respect to a motion to amend consider whether a summary judgment motion is pending and citing

13  *Ferris v. Santa Clara County*, 891 F.2d 715 (9th Cir. 1989)).

14          **2.      Delfin**

15          Defendants assert that they are entitled to summary judgment as to Delfin on the ground that

16  this claim is governed by the Eighth Amendment rather than Fourth Amendment and Plaintiff has

17  not demonstrated a material issue of fact under that standard.  Even if the Fourth Amendment

18  applies, however, Defendants assert that Delfin is entitled to qualified immunity because there is no

19  clearly established law that would have put Delfin on notice that fingerprinting an individual with no

20  visible injury constituted excessive force.  *See* Defendants' Motion at 17 n.7.

21          Defendants' first argument fails because under the facts here, the Fourth Amendment rather

22  than the Eighth Amendment applies to Plaintiff's claim against Delfin.  Under the Eighth

23  Amendment, an inmate suing on the basis of excessive force must establish that the officer's use of

24  force was malicious or sadistic.  *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  The Ninth

25  Circuit has expressly held, however, that "the Fourth Amendment [rather than the Eighth

26  Amendment] sets the applicable constitutional limitations on the treatment of an arrestee detained

27  without a warrant up until the time such arrestee is released or found to be legally in custody based

28  upon probable cause for arrest."  *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996)

United States District Court

For the Northern District of California

1   (holding that trial court erred in applying Eighth Amendment excessive force standard rather than

2   Fourth Amendment standard to § 1983 claim based on alleged constitutional violations that occurred

3   while plaintiff was detained in county jail following warrantless arrest).

4           Second, the Court is not persuaded that Delfin is entitled to qualified immunity on this claim.

5   Construing the facts and Plaintiff's submissions in Plaintiff's favor, Defendant violated Plaintiff's

6   right to be free from excessive force under the Fourth Amendment by twisting Plaintiff's thumb to

7   take a print after Plaintiff told Delfin that he should not take a print because his thumb was injured.

8   Although Defendants assert that it is not "clearly established" that Delfin could not take a print of

9   someone with a sprained or broken thumb where that individual's thumb was not obviously injured,

10  they have cited no authority in support of that position.  If the Court were to accept this argument, it

11  would essentially be holding that an officer may reasonably rely on his own medical opinion,

12  whether or not he is qualified to make a diagnosis, even where the individual has put the officer on

13  notice of the condition.  The Court declines to adopt such a novel rule.  Rather, the Court concludes

14  that an officer who is told that an individual has a thumb injury should know, under clearly

15  established law regarding the use of excessive force, that twisting or manipulating that thumb could

16  constitute excessive force.  Delfin is not entitled to qualified immunity on this claim.

17          **E.      The State Law Battery Claim (Claim Four)**

18          Defendants assert that the state law battery claim (the counterpart to the federal excessive

19  force claim) should be dismissed as to Delfin on the basis that Delfin is immune under two

20  provisions: Cal. Gov't Code § 821.6 and Cal. Penal Code § 298(c)(1).

21          The Court rejects Defendants' assertion that Delfin is immune from Plaintiff's battery claim

22  under Cal. Gov't Code § 821.6.[16]  That section provides that "[a] public employee is not liable for

23  injury caused by his instituting or prosecuting any judicial or administrative proceeding within the

24  scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code

25  § 821.6.  California Courts have held that the policy underlying this immunity is to encourage state

26  _____

27          [16]  In support of his position that section 821.6 does not apply Plaintiff cites to a single case, the
     relevant portion of which is unpublished and may not be cited.  The Court's analysis therefore does not
28  address the case Plaintiff has cited.

**United States District Court**
For the Northern District of California

1    officers to "investigate and prosecute matters within their purview without fear of reprisal by the

2    person or entity harmed thereby." *Shoemaker v. Myers,* 2 Cal. App. 4th 1407, 1424 (1992). Thus,

3    the immunity applies not only to actions taken to initiate formal proceedings but also actions taken

4    in "preparation for formal proceeding." *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205,

5    1209-10 (1994).

6          The Court concludes that this provision does not give Delfin immunity from Plaintiff's

7    claim. First, it is doubtful that this provision extends to acts performed by individuals who are not

8    themselves conducting an investigation but are merely collecting evidence for those who *are*

9    investigating. *See Marsh v. San Diego County*, 432 F. Supp. 2d 1035, 1057 (S.D. Cal. 2006)

10   (holding that section 821.6 did not apply to medical personnel and coroner who provided

11   information for investigator and prosecutor because these individuals were not actually investigating

12   or prosecuting the case). Second, even if section 821.6 does apply to such individuals, it does not

13   extend to claims for assault and battery. *Herve v. City and County of San Francisco*, 2004 WL

14   2806165 (N.D. Cal. Dec. 7, 2004) at *7 (citing *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 267-68

15   (1967)); *Duffy v. San Francisco Police Dep't*, 2005 WL 474856 (N.D. Cal. Feb. 25, 2005).

16         In contrast, the immunity established under Cal. Penal Code § 298(c) may apply. Section

17   298(c) provides as follows:

18              Persons authorized to draw blood or obtain samples or print
                impressions under this chapter for the data bank or database shall not
19              be civilly or criminally liable either for withdrawing blood when done
                in accordance with medically accepted procedures, or for obtaining
20              buccal swab samples by scraping inner cheek cells of the mouth, or
                thumb or palm print impressions when performed in accordance with
21              standard professional practices.

22   Cal. Penal Code § 298(c). It is undisputed that Delfin was authorized to take Plaintiff's thumb

23   prints. Defendants have not, however, offered any evidence on the question of whether Delfin

24   followed "standard professional practices" in twisting Plaintiff's thumb to take a fingerprint where

25   Plaintiff had told Delfin the thumb was injured and where the evidence suggests the thumb may have

26   been sprained. As the statute, on its face, places the burden Defendant Delfin to show that he was

27   following standard professional practices, he is not entitled to summary judgment under this

28   provision.

1    The Court DENIES Defendants' Motion as to Plaintiff's state law battery claim against

2  Defendant Delfin.

3         **F.      The First Amendment Claim Under 42 U.S.C. § 1983 (Claim Five)**

4    Defendants assert that they are entitled to summary judgment on Plaintiff's First Amendment

5  retaliation claim for two reasons: first, they argue that there is no evidence that is sufficient to create

6  a material issue of fact as to whether the SFPD Individual Defendants' conduct was motivated by a

7  desire to retaliate against Plaintiff for exercising his First Amendment rights; second, they argue that

8  even if there is a fact question as to the underlying claim, Defendants are protected by qualified

9  immunity because at the time of the relevant conduct, the question of whether First Amendment

10 retaliation could be established where the officers had probable cause was unclear under existing

11 Supreme Court and Ninth Circuit precedent.  The Court rejects Defendants' first argument, but finds

12 that Defendants are nonetheless entitled to qualified immunity on this claim.

13    To establish a First Amendment violation, a Plaintiff must show that a defendant "by his

14 actions . . . deterred or chilled the plaintiff's political speech and such deterrence was a substantial or

15 motivating factor in the defendant's conduct."  *Mendocino Envtl. Ctr. v. Mendocino County*, 192

16 F.3d 1283, 1300 (9th Cir. 1999) (citations omitted).  In *Skoog v. County of Clackamas*, 469 F.3d

17 1221, 1232 (9th Cir. 2006), the court held that where a First Amendment claim is based on an

18 alleged seizure, a plaintiff may satisfy the causation requirement *even if* there was probable cause

19 supporting the seizure.  In *Skoog*, however, the court found that the defendant, who was alleged to

20 have seized the plaintiff's camera in violation of the First Amendment, was entitled to qualified

21 immunity because the seizure was supported by probable cause and given the unclear state of the

22 law prior to *Skoog*, the defendant could have reasonably believed his actions were lawful.  *Id*. at

23 1235.

24    Here, it is undisputed that Plaintiff was wearing a press pass around his neck and was filming

25 an arrest, making it apparent to even a casual observer that Plaintiff was engaging in First

26 Amendment activities.  While Defendants are correct that there is little if any evidence showing any

27 Defendants were aware that Plaintiff was reporting for Indymedia, the case law does not require that

28 a plaintiff establish that he was retaliated against for reporting on behalf of a *specific* organization.

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1   Defendants' awareness that Plaintiff was a reporter engaged in videotaping is enough to create a

2   material of issue of fact as to Plaintiff's claim that the officers retaliated against him for exercising

3   his First Amendment rights.  Further, the evidence cited by Defendant that other reporters on the

4   scene at the same time were not arrested would likely be significant to a jury addressing the

5   motivation question but it is not sufficient to establish, as a matter of law, that Defendants could not

6   have been motivated by Plaintiff's First Amendment activity.

7       While a fact question exists as to the violation, it is clear under *Skoog* that the SFPD

8   Individual Defendants are entitled to qualified immunity.  There, the court held that until that

9   decision (filed in 2006), it was not clearly established that an officer could not retaliate for First

10  Amendment activities where there was also probable cause for the seizure.  Because this Court has

11  already concluded that the officers could have reasonably believed there was probable cause to arrest

12  Plaintiff, it also concludes that the officers could have reasonably believed that their actions were

13  lawful under the First Amendment.

14      The Court GRANTS Defendants' Motion as to Claim Five, which is dismissed as to all

15  Defendants with prejudice.

16          **G.      The Bane Act Claim (Claim Nine)**

17      Plaintiff asserts claims under the Bane Act against all of the individual Defendants.

18  Defendants argue that they are entitled to summary judgment as to Officer Bautista because Plaintiff

19  did not file a claim under the Government Tort Claims Act.  They argue that they are entitled to

20  summary judgment as to Delfin on the basis of the two immunity provisions discussed above, Cal.

21  Gov't Code § 821.6 and Cal. Penal Code § 298(c).  In addition, Defendants argue that Officers Lazar

22  and Hamilton, who charged Plaintiff, are entitled to summary judgment because they did not engage

23  in any "threats or intimidation" in connection with Plaintiff's exercise or enjoyment of his

24  constitutional rights.

25      The Bane Act is codified at Cal. Civil Code § 52.1, which allows individuals to sue for

26  damages "where any person or persons, whether or not acting under color of law, interferes by

27  threats, intimidation or coercion, with the exercise or enjoyment by any individuals of rights secured

28  by the Constitution or laws of the United States. . . ."  Cal. Civ. Code §§  52.1(a) & (b).  Where a

41

United States District Court

For the Northern District of California

public employee is alleged to have violated the Bane Act for acts in the scope of employment, a plaintiff must file a claim under the Government Tort Claims Act before initiating a lawsuit. *See* Cal. Gov't Code § 950.2. To establish a violation of the Bane Act, neither violence nor threats of violence are required. *Cole v. Doe 1 thru 2 Officers of the City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005). Rather, "[u]se of law enforcement authority to effectuate a stop, detention (including use of handcuffs), and search can constitute interference by 'threat[ ], intimidation, or coercion' if the officer lacks probable cause to initiate the stop, maintain the detention, and continue the search." *Id.*

The Court finds that Defendants are entitled to summary judgment on Plaintiff's Bane Act claim as to Defendants Bautista, Lazar, and Hamilton but not Delfin. First, Plaintiff has not offered any evidence that he complied with the Government Tort Claims Act with respect to his Bane Act claim against Officer Bautista. Therefore, that claim is dismissed. Second, as discussed above, the Court has concluded that there was probable cause for Plaintiff's arrest under at least one state law. Therefore, Plaintiff's theory that Officers Hamilton and Lazar violated the Bane Act through their involvement in his arrest fails under *Cole*. Nor has Plaintiff offered any authority indicating that the actions of Lazar and Hamilton are actionable under the Bane Act on any other basis. Third, the Court has concluded that a factual question exists as to Delfin's immunity (see above) precluding summary judgment on the Bane Act claim against Delfin.

Defendants' Motion is GRANTED as to the Bane Act claims against Bautista, Lazar, and Hamilton, which are dismissed with prejudice. Defendants Motion is DENEID as to the Bane Act claim against Delfin.

## H.     The Federal Common Law Conspiracy Claim (Claim Ten)

Defendants assert that they are entitled to summary judgment as to Plaintiff's conspiracy claim because there is no federal common law conspiracy claim. The Court construes Plaintiff's common law conspiracy claim as a § 1983 conspiracy claim. Such claims have been recognized by courts, including in this Circuit. *See Gilbrook v. City of* Westminster, 177 F.3d 839, 856-857 (9th Cir. 1999) (*en banc*) (affirming jury verdict on § 1983 conspiracy claim); *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2nd Cir. 1999) (setting forth elements required to establish § 1983 conspiracy

United States District Court

For the Northern District of California

1    claim); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 412 (4th Cir. 1996) (same); *Olivierra v. Gates*,

2    2003 WL 251937 (C.D. Cal. Jan. 16, 2003) (same).  Nonetheless, the Court concludes that

3    Defendants are entitled to dismissal of this claim as to Defendants Bautista and Delfin.  Plaintiff

4    omitted these individuals from his interrogatory response in response to the request to "identify the

5    defendants that you believe engaged in a conspiracy and/or cover-up as alleged in Paragraph 43 of

6    YOUR Second Amended Complaint. . . ."  Flynn Decl., Ex. L (Plaintiff's Second Supplemental

7    Response to Defendant Reynoso's Interrogatories).  In doing so, Plaintiff conceded that these

8    Defendants did not engage in any conspiracy.  In addition, with respect to the remaining individual

9    defendants, the Court dismisses the conspiracy claim to the extent it is based on the constitutional

10   violations alleged in Claims One and Five of the Second Amended Complaint on the basis that the

11   Court has already concluded that Defendants are entitled to qualified immunity on these claims.

12   Plaintiff may proceed with his conspiracy claim to the extent that it is based on the remaining

13   constitutional violations alleged in the SAC.

14          **I.       The Negligence Claim (Claim Eleven)**

15          Defendants assert that they are entitled to summary judgment on this claim as to the

16   following Defendants: 1) Bautista on the basis that Plaintiff did not comply with the Government

17   Tort Claims Act; 2) Delfin on the basis that he is immune under Cal. Gov't Code § 821.6 and Cal.

18   Penal Code § 298(c)(1); 3) Lazar and Hamilton on the basis that they are immune under Cal. Penal

19   Code § 836.5(b).[17]  As to Bautista, the Court agrees with Defendants: there is no evidence in the

20   record that Plaintiff filed the required claim under Cal. Gov't Code § 950.2 and therefore, the claim

21   must be dismissed.  With respect to Delfin, the claim survives summary judgment because Cal.

22   Gov't Code § 821.6 does not apply and Cal. Penal Code § 298(c) turns on disputed facts.  As to

23   Lazar and Hamilton, the Court has already concluded that the SFPD Individual Defendants

24   reasonably believed that the arrest was lawful under Cal. Penal Code § 836.5.  As Lazar and

25   Hamilton are only alleged to acted wrongfully as to the arrest, they are entitled to immunity on this

26   claim.

27   ───────────────

28          [17]  Defendants also asserted in their motion that the City and County of San Francisco should
     be dismissed on the negligence claim.  In his Opposition, Plaintiff agreed to dismiss that claim.

**IV.    CONCLUSION**

For the reasons stated above, Plaintiff's Motion is DENIED.  Defendants' Motion is

GRANTED IN PART and DENIED IN PART.  The Court dismisses with prejudice the following

claims: 1) Claim One as to all of the SFPD Individual Defendants; 2) Claim Two as to all of the

SFPD Individual Defendants; 3) Claim Three as to Defendants Bautista, Lazar and Hamilton;[18] 4)

Claim Five as to all of the SFPD Individual Defendants; 5) Claim Six as to all Defendants; 6) Claim

Seven as to all Defendants; 7) Claim Nine as to Defendants Bautista, Lazar, and Hamilton; 8) Claim

Ten as to Delfin and Officer Bautista, and to the extent it is based on the constitutional violations

alleged in Claims One and Five; 9) Claim Eleven as to Defendants City and County of San

Francisco, Lazar, Hamilton, and Bautista.

IT IS SO ORDERED.


Dated: August 23, 2007

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[18]  As noted above, neither Lazar nor Hamilton is named in the caption of Claim Three, but the SAC could arguably be construed to name Lazar and Hamilton as Defendants on Claim Three in light of the reference in the body of the claim to "the SFPD Defendants, and each of them."

United States District Court

For the Northern District of California